308 F.2d 49
 M & R INVESTMENT COMPANY, Inc., d/b/a Dunes Hotel and Casino, Fred Miller, Don Rich, Marvin Cole, Harry Riggs, Grimley Engineering, Inc., d/b/a Transglobal Airlines, Inc., and Catalina Air Transport d/b/a Catalina Airlines, Petitioners,
v.
CIVIL AERONAUTICS BOARD, Respondent.
 No. 17314.
 United States Court of Appeals Ninth Circuit.
 September 19, 1962.
 
 Keating & Sterling and Roland E. Ginsburg, Los Angeles, Cal., for petitioners.
 Lee Loevinger, Asst. Atty. Gen., Irwin A. Seibel, Atty., Dept. of Justice, Washington, D. C., John H. Wanner, Gen. Counsel, Joseph B. Goldman, Deputy Gen. Counsel, O. D. Ozment, Associate Gen. Counsel, Litigation & Research, Robert L. Toomey and John F. Rodgers, Attys., Civil Aeronautics Board, Washington, D. C., for respondent.
 Before MERRILL and BROWNING, Circuit Judges, and JAMES M. CARTER, District Judge.
 BROWNING, Circuit Judge.
 
 
 1
 Petitioner M & R Investment Company, Inc., doing business as the Dunes Hotel and Casino, at Las Vegas, Nevada, offered and sold "Dunes Magic Carpet Tours" to the general public in the Los Angeles, California area. The "Tours" included "free" air transportation between Los Angeles and Las Vegas. The Civil Aeronautics Board found that the "Tours" constituted "air transportation" (defined in the Federal Aviation Act as "carriage by aircraft of persons * * * as a common carrier for compensation or hire"),[1] and were therefore prohibited by the Act in the absence of authorization from the Board.[2] Petitioners seek review of the Board's order to cease and desist.
 
 
 2
 1. In Las Vegas Hacienda, Inc. v. C. A. B.,[3] we reviewed the Board's determination that "Fiesta Flights" between Los Angeles and Las Vegas, which were included "free" as part of "Champagne Tours" sold by another hotel operator, constituted "air transportation." We sustained the Board's conclusion because we found substantial evidence in the record that by selling "Champagne Tours" Hacienda was acting as a common carrier by air; i. e., it "was engaged as a regular business in offering air transportation to the general public in the commercial market."[4]
 
 
 3
 Petitioners acknowledged that their flights resemble those in Hacienda. But they argue that they are distinguishable because the "Tours" in the present case were sold only to persons who were to be patrons of the Dunes Hotel, either for the evening or as overnight guests.
 
 
 4
 We agree with the Board that this distinction is not significant. The record amply demonstrates that "Magic Carpet Tours" were held out as available to all who wished to purchase them. The flights which were included in the "Tours" were no less common carriage because available only to those members of the public who were interested in patronizing the Dunes Hotel. "The public does not mean everybody all the time."[5] On both reason and authority "it is immaterial that the service offered will be attractive only to a limited group."[6]
 
 
 5
 2. The Civil Aeronautics Act was superseded by the Federal Aviation Act as of January 1, 1959. The provisions of each Act pertinent to the present case are identical.[7] The complaint alleged violation of the new Act. Over petitioners' objection the Examiner received evidence of petitioners' activities prior to January 1, 1959. Petitioners argue that this was error, and that if the evidence had been excluded the Board's order would have been without substantial support in the record.
 
 
 6
 We think the evidence was admissible.[8] But in any event the Examiner rejected the contention on the additional ground that there was substantial independent proof that petitioners had engaged in "air transportation" subsequent to January 1, 1959. We have reviewed the record, and agree.
 
 
 7
 3. Petitioners further attack the Board's order as vague and indefinite. We sustained a similar order in Hacienda, though criticizing its form.[9] The Examiner's decision, adopted by the Board, is sufficiently detailed to adequately advise petitioners of the conduct which is prohibited. Since the present order predated the Hacienda opinion, it would be inappropriate to hold the Board to the stricter standard suggested in that case.
 
 
 8
 4. The Board's order runs against Don Rich and Fred A. Miller, "individually, and as principals in Trans Global Airlines." Petitioners contend that the record does not support an order against the named individuals.
 
 
 9
 The Board found that the flights were "operated under the Dunes' complete direction, supervision and control," and that the "physical operation of the Dunes flights is performed by Trans Global * * * pursuant to contracts" with the Dunes Hotel. The order against Rich and Miller as individuals was based upon the fact that they were principals in Trans-Global, and that they owned two aircraft which were leased to the Dunes Hotel for the flights. The Board felt that since the flights involved common carriage, those who were responsible for the physical operation of the aircraft were also engaged in common carriage. As we pointed out in Hacienda, the conclusion does not follow from the premise.
 
 
 10
 Trans-Global was a "Part 45" carrier, certificated by the Board to engage in "air commerce."[10] The essential distinction between "air commerce" and "air transportation" in the present case, as in Hacienda, was "the holding out (primarily through advertising, ticket sales, and similar activities) that the flights were available to the general public for compensation or hire."[11] There is no suggestion in the findings and conclusions, nor in the portions of the record called to our attention, that the individual petitioners participated in the activities which gave the flights the character of "air transportation." On the contrary, the Board found that "the operation of the flights and advertising of the flights are in Dunes' name, [and] all of the duties and services incident thereto except the physical operation of the aircraft are performed by Dunes."
 
 
 11
 The government argues that the Board must be permitted to enjoin all those who participate in an integrated carrier operation which violates the Act, even though the participants may have agreed among themselves to a division of responsibility for various portions of the operation.[12] We agree. We also agree that the circumstances of this case suggest that an inquiry directed to that issue might have developed sufficient evidence to support findings that the individual petitioners did in fact knowingly participate in a common course of conduct which constituted the furnishing of "air transportation" without the required certificate. But the evidence was not developed and the findings were not made, apparently on the assumption, which we have held erroneous, that furnishing the equipment and participating in the physical flight operations were alone enough.
 
 
 12
 The cease-and-desist order of a regulatory body may impose a heavy although intangible burden upon an individual who must continue to make his livelihood in the regulated industry. Such an order must be supported by specific findings based upon substantial evidence that the individual enjoined has participated in the unlawful conduct. The Board's conclusion that the individual petitioners were engaged in "air transportation" is not supported by the present record.[13]
 
 
 13
 The order of the Board is modified by striking the words "and Fred A. Miller and Donald Reichgott a/k/a Don Rich, individually and as principals in Trans Global Airlines," and as modified is affirmed.
 
 
 
 Notes:
 
 
 [1]
 49 U.S.C.A. § 1301 (10), (21)
 
 
 [2]
 49 U.S.C.A. § 1371(a)
 
 
 [3]
 298 F.2d 430 (9th Cir. 1962)
 
 
 [4]
 Id. at 434
 
 
 [5]
 Terminal Taxicab Co. v. Kutz, 241 U.S. 252, 255, 36 S.Ct. 583, 584, 60 L.Ed. 984 (1916)
 
 
 [6]
 Las Vegas Hacienda, Inc. v. C. A. B., 298 F.2d at 434
 
 
 [7]
 Id. at 432, note 1
 
 
 [8]
 See F. T. C. v. Cement Institute, 333 U.S. 683, 703-706, 68 S.Ct. 793, 804-806, 92 L.Ed. 1010 (1948)
 
 
 [9]
 298 F.2d at 439 and note 35
 
 
 [10]
 14 C.F.R. § 45
 
 
 [11]
 298 F.2d at 440
 
 
 [12]
 Citing North American Airlines, Inc. v. C. A. B., 100 U.S.App.D.C. 5, 240 F.2d 867 (1956), and Great Lakes Airlines, Inc. v. C. A. B., 291 F.2d 354 (9th Cir. 1961)
 
 
 [13]
 As in Hacienda, we are not concerned here with the question of when an individual may be held personally responsible for acts done in the name of a corporation. See, e. g., F. T. C. v. Standard Education Society, 302 U.S. 112, 119-120, 58 S.Ct. 113, 116-117, 82 L.Ed. 141 (1937); S. E. C. v. Universal Service Ass'n, 106 F.2d 232, 238 (7th Cir. 1939)