**UNITED STATES of America and Civil Aeronautics Board, Plaintiffs,**

v.

**CARIBBEAN VENTURES, LTD., d/b/a Reef Casino, et al., Defendants.**

Civ. No. 74–1973.

United States District Court,
D. New Jersey.

Dec. 20, 1974.

Jonathan L. Goldstein, U. S. Atty. by George E. Mittleholzer, Asst. U. S. Atty., Newark, N. J., James W. Tello, C. A. B., and Thomas C. Halloran, F. A. A., of counsel, for plaintiffs.

Boros & Garofalo by Howard S. Boros, Washington, D. C., for Caribbean Ventures, Ltd. d/b/a Reef, Anthony Velardi, and Phillip Snyder.

Palmer & Lazar by Bruce E. Lazar, Miami, Fla., for L & S International, Inc., Eastern Aircraft Services, Ltd., R. K. K. Corp. and Leonard Simkovitz.

## MEMORANDUM OPINION

LACEY, District Judge.

The United States of America, acting on behalf of the Federal Aviation Administration, and the Civil Aeronautics Board, sues to enjoin a proposed course of conduct engaged in by the defendants, jointly and severally, which is scheduled for December 21, 1974, and thereafter. The defendants are Caribbean Ventures, Ltd. (CVL), an Antigua corporation, and others, some of whom I shall generically style the Florida defendants, and including, as well, Kammann, the purported pilot, and Velardi and Snyder, allegedly principals of CVL.

Jurisdiction is claimed (and not contested) under 49 U.S.C. § 1487(a), and venue is properly in this district, it being further noted that significant activity involved herein has and will occur in New Jersey.

■■ This matter is before me at this stage on plaintiff's application for a preliminary injunction. It is well to review fundamental principles implicated by an application for a preliminary injunction. Traditionally, a preliminary injunction will not ordinarily issue except on a showing that the party seeking this extraordinary relief will be irreparably injured *pendente lite* if his application is denied. However, in cases where a violation of a statute, or of federal regulations implementing a statute, is alleged, as in this case, a showing of irreparable injury is not required. C. A. B. v. Donaldson Line (Air Services) Limited, 343 F.Supp. 1059 (S.D.N.Y. 1972); C. A. B. v. Modern Air Transport, Inc., 81 F.Supp. 803, 806 (S.D.N.Y.1949), aff'd, 179 F.2d 622 (2d Cir. 1950). There must be shown, however, in addition to the alleged statutory violation, that there is a reasonable proba-

bility of eventual success on the merits *and that the public interest favors granting the relief thus sought.* Penn Galvanizing Co. v. Lukens Steel Co., 468 F.2d 1021, 1023 (3d Cir. 1972); Winkleman v. New York Stock Exchange, 445 F.2d 786, 789 (3d Cir. 1971); A. L. K. Corp. v. Columbia Pictures Industries, Inc., 440 F.2d 761, 763 (3d Cir. 1971); Mixing Equipment Co. v. Philadelphia Gear, Inc., 436 F.2d 1308, 1315 (3d Cir. 1971); U. S. Steel Corp. v. Fraternal Ass'n of Steelhaulers, 431 F. 2d 1046, 1048 (3d Cir. 1970); Nelson v. Miller, 373 F.2d 474, 477 (3d Cir. 1967), cert. denied, 387 U.S. 924, 87 S.Ct. 2042, 18 L.Ed.2d 980 (1967); Kontes Glass Co. v. Lab Glass, Inc., 373 F.2d 319, 320 (3d Cir. 1967); Ikirt v. Lee National Corp., 358 F.2d 726, 727 (3d Cir. 1966); Joseph Bancroft & Sons Co. v. Shelly Knitting Mills, Inc., 268 F.2d 569, 573–574 (3d Cir. 1959); Warner Bros. Pictures, Inc., v. Gittone, 110 F.2d 292, 293 (3d Cir. 1940).

█ The public interest is entitled to great consideration in the necessary balancing of equities in a determination by a district court whether to issue a preliminary injunction or not. *See* Delaware River Port Auth. v. Transamerican Trailer Transport, Inc., 501 F.2d 917, 920 (3d Cir. 1974). *See also,* Commonwealth of Pennsylvania ex rel. Creamer v. United States Department of Agriculture, 469 F.2d 1387, 1388 (3d Cir. 1972); In re Penn Central Transportation Co., 457 F.2d 381, 384–385 (3d Cir. 1972); Nelson v. Miller, *supra.*

I shall deal with CVL and its principals first. The government pleads as to them as follows:

## Count I

By virtue of the holding out of air transportation services to members of the general public, CVL and its principals are indirect air carriers or indirect foreign air carriers within the meaning of the Federal Aviation Act, 49 U.S.C.A. § 1301(3), (10), (19) and (21).

## Count II

The conduct of the defendants, CVL, Velardi and Snyder, in holding out air transportation services to the public (and the conduct of the defendants, L & S International, Inc., Eastern Aircraft Services Ltd., R. K. K. Corporation and Leonard Simkovitz, Lloyd Kammann), through their combined activities constitutes them a single, integrated air carrier engaging in air transportation as an air carrier or foreign air carrier within the meaning of the Federal Aviation Act, 49 U.S.C.A. § 1301(3), (10), (19), (21).

## Count III

The defendants, CVL, Velardi and Snyder are engaged in the direct operation of an aircraft as an air carrier or foreign air carrier within the meaning of the Federal Aviation Act, 49 U.S.C.A. § 1301(3), (10), (19), (21) and (26).

It is admitted that none of the defendants has a certificate of public convenience and necessity or foreign air carrier permit issued by the C. A. B. It is this absence of certification which the government claims in Counts I–III is violative of 49 U.S.C.A. §§ 1371(a) and 1372(a).

Counts IV and V allege that as an air carrier or as an operation for hire defendants have failed to secure an appropriate air carrier operating certificate, *see* 49 U.S.C.A. § 1430(a)(4) and 14 C. F.R. 121.3, or an appropriate commercial operator operating certificate. *See* 49 U. S.C.A. § 1430(a)(5) and 14 C.F.R. 121.-3(f).

Turning first to Count III of the complaint, it is alleged that CVL is a direct carrier. It is not disputed that CVL does in fact transport passengers from the New York Metropolitan area and more specifically Newark, N. J. to Antigua, B. W. I. on a leased Boeing 720 with the hopes that said passengers will gamble at CVL's casino operated by its principals, defendants Snyder and Velardi (Defendants' Brief, at 4). A fair read-

ing of the lease as well as the affidavit of Snyder indicates that CVL and its principals have sole operational control over the aircraft. What is at the core of this suit and order to show cause is the characterization of that aviation operation carried on by CVL and its principals.

The government claims in Count III that the defendants have violated 49 U.S.C.A. §§ 1371(a) and 1372(a). § 1371(a) provides:

No air carrier shall engage in any air transportation unless there is in force a certificate [of public convenience and necessity] issued by the Board authorizing such air carrier to engage in such transportation.

§ 1372(a) provides:

No foreign air carrier shall engage in foreign air transportation unless there is in force a permit issued by the Board authorizing such carrier so to engage.

An air carrier under 49 U.S.C.A. § 1301(3) means "any citizen of the United States who undertakes, whether directly or indirectly or by a lease or any arrangement, to engage in air transportation." A foreign air carrier, under 49 U.S.C.A. § 1301(19) means "any person, not a citizen of the United States, who undertakes, whether directly or indirectly or by lease or any other arrangement, to engage in foreign air transportation." Air transportation and foreign air transportation mean "the carriage by aircraft of persons or property as a *common carrier for compensation or hire* . . ." (emphasis added). It is stipulated that the principals of CVL are citizens of the United States and that CVL is a citizen of Antigua. Thus, if the government can show a reasonable likelihood of success on the merits as to the violations claimed in Count III, any violations attributable to the principals would come under 49 U.S.C.A. § 1371(a) and any violations attributable to CVL would come under 49 U.S.C.A. § 1372(a).

To show a likelihood of success on the merits, the government must show that there is a reasonable likelihood that CVL and its principals are "common carriers for compensation or hire." It is the defendants' position that there is no compensation involved in this case from any of their passengers, air transportation to Antigua being offered free of charge without any "tie-in," and as such the C. A. B. has no jurisdiction to require certification.

CVL and its principals have scheduled a series of weekly flights to Antigua, B. W. I., which are open to the general public with the hope of increasing business in CVL's Reef Casino, the only gambling establishment in Antigua. Advertising matter was sent to wholesale and retail travel agents in the New York area. The original material, advertising a series of Sunday-to-Sunday trips, commencing weekly from November 24, 1974, offered air transportation to Antigua plus a land package featuring seven nights in Antigua for $239.00 with an optional meal plan. (Complaint, Exhibit A). This advertisement, however, did not specifically state that the air transportation was free or that it could be obtained without the land accommodations. After the government informed CVL that it might seek an injunction against the flights, CVL, on advice of counsel, cancelled the Sunday-to-Sunday flights and instituted a Saturday-to-Saturday program, with the first flight scheduled for tomorrow, December 21, 1974. The original advertising was superseded by new advertisements distributed to travel agents which indicated that the "purchase of the land accommodations for $239.00 is not preconditioned to obtaining the free air transportation." (Defendants' Brief, Appendix E). It is alleged that all passengers previously solicited for the Sunday flights were resolicited, that all passengers were advised in writing that the land accommodations were optional and that refunds would be forthcoming for those who wished to fly but wished to find accommodations other than those offered in the brochure in Antigua (Defendants' Brief, at 7–8). CVL, it is alleged, further instructed travel agents on

December 1, 1974 that they were to make no representations to lead prospective passengers to believe that free air passage was preconditioned on the purchase of land accommodations at the Holiday Inn, wherein is located the Reef Casino (Defendants' Brief, Appendix D). *But see* Radeloff and Davenport affidavits and Radeloff supplemental affidavit.

Defendants allege the above as proof that they have taken "great pains to avoid the inference that they are holding out transportation for compensation or hire." (Defendants' Brief, at 11). Good faith, however, is not enough. *See* Voyager 1000 v. C. A. B., 489 F.2d 792, 801 (7th Cir. 1973). In Las Vegas Hacienda, Inc., v. C.A.B., 298 F.2d 430, at 434 (9th Cir. 1962), a case involving a Las Vegas tour which included a "free" ride, the court stated:

> . . . the dominant factor in fixing common carrier status at common law is the presence of a "holding out" to transport the property or person of any member of the public who might choose to employ the proferred service. State of Washington ex rel. Stimson Lumber Co. v. Kuykendall, 275 U.S. 207, 211–212, 48 S.Ct. 41, 72 L.Ed. 241 (1927). The test which the Board applies is an objective one, relying upon what the carrier actually does rather than upon the label which the carrier attaches to its activity or the purpose which motivates it. So long as the air carrier is competing commercially in the market for the patronage of the general public, the Board holds that it is immaterial that the service offered will be attractive only to a limited group; or that it may be performed pursuant to special contract. It is also immaterial that in terms of the carrier's own bookkeeping the transportation may be furnished at cost, at a loss, or even without charge. (footnotes omitted)

■ Admittedly, defendants hope for economic gain from this air venture, and if they are successful there will be an economic impact on the scheduled air carriers serving the island of Antigua.

The Act brings within its regulatory scheme all those who compete in the commercial market in the business of offering air transportation to the public generally, *Id.*; *and see* Monarch Travel Services v. Associated Cultural Clubs, 466 F.2d 552 (9th Cir. 1972), cert. denied, 410 U.S. 967, 93 S.Ct. 1444, 35 L. Ed.2d 701 (1973); M. & R. Investment Co. v. Civil Aeronautics Board, 308 F.2d 49 (9th Cir. 1962).

Defendants, as well as the government, rely on *Hacienda.* The defendants read *Hacienda* as requiring a finding of some direct charge to passengers or "tie-in" with a required package purchase. They argue that the facts of *Hacienda* are highly distinguishable from the matter *sub judice.* In addressing an argument based on an ultimate hope of future business advantage, the court stated that it did not believe that the circumstance of offering gratuitous transportation with the hope of future business advantage would require the C. A. B. to restrict the concept of "compensation or hire" in a way which would exclude from the economic coverage of the Act carriage offered to the public in the market on a competitive commercial basis. Id., 298 F.2d at 436. The *Hacienda* court further noted that gratuitous carriage could be included within the Act if sufficiently expanded and regularized beyond the common practice of carrying employees or selected customers in company-owned planes. *Id.* at n. 17.

While the facts in this matter are one step removed from those in *Hacienda,* I find here on the part of defendants more than a mere hope of economic benefit. While the advertisement offers "optional" land accommodations, the wording is such as to connote a "package deal." This, I find, is a transparent subterfuge to circumvent the holding in *Hacienda. See also,* Radeloff and Davenport affidavits and Radeloff supplemental affidavit.

■ Given this court's interpretation of *Hacienda,* in light of the admitted conduct and intention of the defendants to carefully carve their way around it,

as well as the inferences drawn from the superseding advertising, I find that there is, on the part of the government, a reasonable probability of success in proving that CVL and its principals are common carriers for compensation or hire as alleged in Count III. As to the principals, *see* M. & R. Investment Co. v. C. A. B., *supra*, 308 F.2d at 51. I further find based on the lease and the Snyder affidavit that defendants are direct carriers.

Even if the allegations by the government that the Florida defendants were in actual control of the flight operations or in joint control with CVL and its principals, *see* Counts I and II, CVL and its principals would fare no better. As to Count II, a joint venture would require direct participation. As to Count I, the word "indirect" air carrier is not specifically defined in the statute, but represents an administrative characterization for persons who indirectly participate in air transportation. A finding of direct participation would *a fortiori* include indirect participation.

 There is, however, insufficient evidence before me to conclude that the government would likely prevail on the merits against the Florida defendants on Counts I and II. *Compare* the Halloran affidavit *with* the Snyder affidavit.

Returning to CVL and its principals, there is, as well, a reasonable likelihood of success on the merits against them as to Counts IV and V. Under Count IV it is noted that pursuant to 49 U.S.C.A. § 1430(a)(4) and Federal Aviation Regulation 121.3, 14 C.F.R. 121.3, no person may engage in air transportation as an air carrier without having an appropriate air carrier operating certificate granted under the terms of Part 121. As discussed, *supra*, it would appear, based upon what is before me at the moment, that the government will be able to establish at final hearing that CVL and its principals are an air carrier engaging in air transportation within the meaning of the aviation statutes. 49 U. S.C.A. § 1301 et seq. It is admitted that defendants do not possess the re-

quired operating certificate. Similarly, under the allegations in Count V, Section 121.3(f) of the Federal Aviation Regulations, 14 C.F.R. § 121.3(f), provides that:

> No person . . . may engage in the carriage of persons or property for compensation or hire in air commerce without, or in violation of a commercial operator operating certificate and appropriate operating specifications issued under this part.

Under 49 U.S.C.A. § 1430(a)(5), it is unlawful

> for any person to operate aircraft in air commerce in violation of any . . . regulation of the Administrator . . .

As hereinabove discussed, on the basis of what is before me, there is a strong likelihood that at final hearing the government will succeed in showing that CVL and its principals are carriers for compensation or hire, and thus in violation of 14 C.F.R. § 121.3(f) and thus in violation of § 1430(a)(5), for not having the requisite certificate. As to the principals, *see* Aircrane, Inc. v. Butterfield, 369 F.Supp. 598, 613 (E.D.Pa. 1974).

Here also, as above, there is no sufficient showing of control which would lead to a reasonable likelihood of success on the merits as to the Florida defendants. *Cf.* United States v. Bradley, 252 F.Supp. 804, 805 (S.D.Tex.1966).

This court must next balance the equities of the parties and consider the public interest in determining whether a preliminary injunction should issue. The defendants argue that there can be no public interest in depriving the public of its right to travel and allegedly inconveniencing them.

 Defendants fail to take into account the overriding public interest in the safe passage of air travelers, particularly where, as here, they would be unaware of the regulatory differences between Part 91 regulations which defendants deem applicable, and Part 121 regulations which the government urges and

which I have found is reasonably likely to be applicable. That public interest is obviously significant in view of the concerns reflected in the statutory and regulatory fabric applicable to aviation generally. The defendants cannot be permitted to jeopardize the public interest which the regulations were reasonably designed to protect.

Defendants object to the hearsay nature of the affidavits. Actually, the material therein is simply confirmatory of the impression I have, based upon everything before me, that, when substance rather than form is considered, this is in fact a "package" arrangement. It offends common intelligence to state that CVL is expending an admitted $3,000 an hour in order to afford "free" transportation to Antigua to its passengers. Oral argument developed that every passenger on tomorrow's flight has paid the stipulated sum. The shrewd and counselled belated revision of the advertising material cannot be allowed to disguise the true state of affairs. I cannot allow the pervasive federal regulations, reflecting the congressional concern for the economics and safety of air traffic, to be so easily evaded. However, returning to the expressed concern for the hearsay affidavits, I am going to ignore the materials therein for the purposes of this decision.

CVL's counsel complains of the timing of the government's application. Oral argument developed that CVL's counsel must shoulder the responsibility for any untimeliness. Moreover, notwithstanding the advanced information which counsel had of the government's application, no passengers were notified of the possibility of an injunction issuing.

CVL's counsel at oral argument contended that this proceeding had unfairly selected his client out of many. There is nothing before me to indicate that this claim has any merit.

The materials submitted and oral argument lead to the conclusion that CVL has operated its gambling casino for many years but that it has no expertise whatever in the aviation industry and that this is the first flight it has undertaken. Supervision of the operation is in Snyder, who is without aviation expertise. It hardly suffices that CVL will rely on an experienced crew. I cannot ignore the terrible implications arising from the potentials for disaster where inexperienced operators undertake to transport over the ocean the passengers here involved; and it is no answer to say that the latter have a right to embark upon such flights if they choose to. The fact is that it was long ago determined that the public had to be protected by the intricately woven federal statutory and regulatory fabric. The spirit underlying this regulation requires a generous interpretation rather than a restrictive one.

Under all the circumstances, therefore, the application is granted as to CVL, its officers, agents, servants and employees, and those in privity with it.

As to the Florida defendants, as hereinabove set forth, there is no basis for granting the government's application. Mr. Lazar represented to me at oral argument that the lease entered into between the Florida defendants and CVL is a "dry" lease and I find that nothing substantial has been presented to me contra.

CVL and its principals have moved to dismiss on various grounds discussed in this opinion. Since I have in essence treated the merits involved in that motion, the motion to dismiss is denied.

The Florida defendants join in the motion to dismiss. Their motion is denied without prejudice to renew after discovery has been completed.