UNITED STATES of America,
Plaintiff-Appellee,

v.

POLLUTION ABATEMENT SERVICES OF OSWEGO, INC., H. Willard Pierce and Jack Miller, Defendants-Appellants.

No. 1281, Docket 85–6005.

United States Court of Appeals, Second Circuit.

Argued May 29, 1985.

Decided June 3, 1985.

Leonard H. Amdursky, Oswego, N.Y., for defendants-appellants Pierce and Miller.

Maria A. Iizuka, Washington, D.C., (F. Henry Habicht II, Asst. Atty. Gen., Washington, D:C., Frederick J. Scullin, Jr., U.S. Atty., Craig A. Benedict, Asst. U.S. Atty., Syracuse, N.Y., Robert L. Klarquist, Elizabeth Yu, Dept. of Justice, Washington, D.C., Eric Schaff, Environmental Protection Agency, New York City, Elizabeth Cox, Ephriam King, Environmental Protection Agency, Washington, D.C., on the brief), for plaintiff-appellee.

Before KAUFMAN and KEARSE, Circuit Judges, and MISHLER *, District Judge.

IRVING R. KAUFMAN, Circuit Judge:

### BACKGROUND

Pollution Abatement Services of Oswego, Inc. ("PAS") operated an industrial waste disposal service in Oswego, New York. The PAS site was located on the banks of Wine Creek, which flows into Lake Ontario. H. Willard Pierce, the President of the firm, and Jack Miller, its Vice-President, ran the company's day-to-day operations and were two of only four shareholders.

In 1977, the United States brought an action against PAS, Pierce and Miller, charging violations of Section 13 of the Rivers and Harbors Appropriation Act of 1899 (the "Act"), 33 U.S.C. § 407 (1982). Specifically, the complaint alleged that PAS had been discharging refuse into Wine Creek since early 1976. Moreover, the

---

* The Honorable Jacob Mishler, District Judge, Eastern District of New York, sitting by designation.

government claimed the firm had been storing thousands of drums of highly toxic chemicals—including polychlorinated biphenols (PCBs), pesticides, and hydrocarbons— on the banks of the creek.

At a hearing on the government's motion for a preliminary injunction, the district court addressed the liability of both the corporate and individual defendants. In assessing the roles of Pierce and Miller in the operation of the enterprise, Judge Port stated that

> [t]he individual defendants, by reason of their respective positions and activities in the Corporation, and by reason of their activities, had the responsibility and the authority either to prevent, in the first instance, or promptly to correct the violations complained of, and they failed to do so.

The court also noted that PAS was a small, closely held corporation, and inferred that there were "overlapping responsibilities of the officers and managers who were running the Company." In sum, Judge Port held that it was "quite uncontrovertible" that individual defendants were personally accountable for the violations.

In fashioning a remedy, the court recognized that PAS had neither the financial resources nor technical expertise necessary to effect a proper clean-up of the site. Accordingly, Judge Port directed the government to undertake a clean-up operation in an expeditious manner. At the same time, he ordered that a judgment be entered against the corporation and its individual officers, jointly and severally, for the cost of such operations, with the dollar amount left blank until the magnitude of the expenditures could be ascertained.

Removal of the toxic materials stored at the PAS site required approximately two years. In March 1983, the government certified the amount of $411,269.10 as the reasonable and necessary costs of complying with the court's order, and that sum was entered in the judgment that had previously been left blank.[1] Pierce and Miller timely filed a notice of appeal.[2]

### DISCUSSION

■ At the outset, we note that, although § 16 of the Act, 33 U.S.C. § 411, which enforces § 13, expressly provides only for fines and prison sentences, Pierce and Miller concede "it is well settled that the Court has the authority to issue injunctions, ... as well as order the government to enforce The Act and then recover its costs in a civil action." (Brief for Appellants at 7–8). *See Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 204, 88 S.Ct. 379, 387, 19 L.Ed.2d 407 (1967); *United States v. Perma Paving Co.*, 332 F.2d 754, 757–58 (2d Cir.1964). Moreover, they do not take issue with the dollar amount claimed by the government. The sole issue on appeal, therefore, is whether personal liability may be imposed upon the individual defendants.

■ Pierce and Miller mistakenly frame the issue as whether corporate officers may be held civilly liable for a corporate violation of the Act. Accordingly, they rely almost exclusively on *United States v. Sexton Cove Estates, Inc.*, 526 F.2d 1293, 1300–01 (5th Cir.1976) (construing sections of the Act analogous to §§ 13, 16), and its companion case, *United States v. Joseph G. Moretti, Inc.*, 526 F.2d 1306, 1310 (5th Cir.1976) (relying on and following *Sexton Cove*). In *Sexton Cove*, the court held

---

1. Pierce and Miller appealed to this Court from the final judgment entered in 1983. After a pre-argument conference held pursuant to our Civil Appeals Management Program, the case was remanded to the district court to determine whether it had the authority to enjoin the defendants from further discharging, to require the government to clean up the site, and to authorize the government to certify the costs of the clean-up, and to consider whether the sum expended for the clean-up costs was reasonable.

By order date October 3, 1984, the district court found that it was authorized to issue those orders, and stated that the defendants had stipulated that the sum expended was reasonable and necessary. Final judgment was entered on October 18, 1984, and this appeal followed.

2. PAS, which was dissolved by proclamation for nonpayment of taxes, is not a party to the instant appeal.

that "[a] corporate officer may not be held civilly liable for a *corporate violation* ... [unless] there are sufficient allegations and proof to permit negation of the corporate form." 526 F.2d at 1300 (emphasis added). Clearly, the Fifth Circuit viewed the officer's liability in that case as derivative rather than personal. By contrast, the liability imposed upon Pierce and Miller was not premised solely on their corporate offices or ownership, but was bottomed on their personal involvement in the firm's activities. Accordingly, appellants' reliance on the cases from the Fifth Circuit is misdirected and wholly unavailing.

This Court has not previously held individual corporate officers personally liable for violations of the Rivers and Harbors Act. In examining the statutory language and our precedents, however, we are drawn to the inescapable conclusion that the activities of Pierce and Miller fall within the proscriptive ambit of the Act. Section 16, 33 U.S.C. § 411 (1982), provides that "[e]very person and every corporation that shall violate, or that shall knowingly aid, abet, authorize, or instigate a violation" of the relevant section of the Act may be held criminally liable. Pierce and Miller argue that Section 16, which refers explicitly only to criminal sanctions, is wholly irrelevant. We disagree. Courts have long allowed for the imposition of civil liability upon corporations for violations of the Act. *See Wyandotte, supra,* 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407; *Perma Paving, supra,* 332 F.2d 754; *see also In re Oswego Barge Corp.,* 664 F.2d 327, 335 (2d Cir. 1981) (discussing judicially created civil remedies under the Act). In light of the clear congressional intent to hold "person[s]" liable for violations, we see no reason to shield from civil liability those corporate officers who are personally involved in or directly responsible for statutorily proscribed activity.

Our holding today comports with this Court's expansive construction of remedial environmental statutes. In *United States v. American Cyanamid Corp.,* 480 F.2d 1132, 1135 (2d Cir.1973), we eschewed a "cramped reading" of the Rivers and Har-

bors Act, focusing on its broad remedial purposes. More recently, in construing the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §§ 9601–57 (1982)—an analogous statute—we held a corporate officer individually liable without piercing the corporate veil. *See New York v. Shore Realty Corp.,* 759 F.2d 1032, 1052–53 (2d Cir.1985).

Ample evidence was adduced before the district court to support a finding that Pierce and Miller were responsible for PAS's day-to-day operations, and for its illegal dumping and storage activities. As a result, we believe the imposition of civil liability upon them was proper.

Accordingly, the judgment of the district court is affirmed.