UNITED STATES of America, Plaintiff,

v.

MIDWESTERN POUCH EXPRESS, INC., et al., Defendants.

Civ. A. No. 86–639 (CSF).

United States District Court, D. New Jersey.

June 15, 1987.

Samuel A. Alito, Jr., U.S. Atty. by Vincent E. Gentile, Asst. U.S. Atty., Newark, N.J., for plaintiff.

Stern, Steiger, Croland, Tanenbaum & Schielke, P.A. by Kenneth S. Goldrich, Paramus, N.J., for defendants.

### ORDER

CLARKSON S. FISHER, Chief Judge.

The court having received a report and recommendation from the Honorable Freda L. Wolfson, United States Magistrate, and having heard the objections of counsel to same, and the court being in agreement with the report and recommendation, it is on this 15th day of June, 1987,

ORDERED that the report and recommendation of the magistrate dated and filed May 4, 1987, recommending that plaintiff's cross-motions for summary judgment against defendant Midwestern Pouch Express, Inc., and Michael Edrei be granted, be denied as to ECC Aviation, Inc., and Edrei Communications Corp., and defendants' motions for summary judgment as to Midwestern Pouch Express, Inc., ECC Aviation, Inc. and Michael Edrei be denied, and defendants' motion for summary judgment as to Edrei Communications Corp. be granted, is approved and adopted by the court.

REPORT AND RECOMMENDATION

May 4, 1987

FREDA L. WOLFSON, United States Magistrate.

The United States has brought this action against Midwestern Pouch Express, Inc. ("Midwestern"), E.C.C. Aviation, Inc. ("E.C.C."), Edrei Communications Corporation ("Edrei Communications") and Michael Edrei for alleged violations of 49 U.S.C. § 1430(a) and Federal Aviation Regulations, in particular 14 CFR 135,[1] and seeks penalties pursuant to 49 U.S.C. § 1471. Defendants have moved for summary judgment, and the plaintiff has filed a cross-motion for summary judgment. Argument was held on March 2, 1987.

After recounting certain of the stipulated facts, I shall address first the liability issue concerning Midwestern, the air carrier. Secondly, I shall turn to the motions regarding the other defendants: Michael Edrei, President and Chief Executive Officer of Midwestern, and of the other corporate defendants, E.C.C. and Edrei Communications; Edrei Communications, which publishes books, magazines and reference materials, with monthly magazines and periodicals constituting the bulk of its publications; and E.C.C., whose sole purpose was to "either purchase or lease vehicles for distribution of the products of Edrei's customers, to lease those airplanes or vehicles to the operational arm, which is Midwestern Pouch Express." (Edrei dep. at 6–7). Any claim against these latter defendants must first survive the essential liability dispute, which is based on the activities of Midwestern.

FACTS

As stipulated in the pretrial order filed December 29, 1986, Midwestern operated an air delivery service from March 18 through August 30, 1985, primarily between New Jersey and airports in Michigan and Illinois. Midwestern transported printed material, such as magazines, newspapers and other periodicals, for which it received payments of approximately $200,000 from 13 or more customers including: Investors Daily, Inc.; New York Post, Inc.; Air Source Express, Inc.; Fairchild Publications, Inc.; Grace Courier Services; Hassett Air Express; Viking Express, Inc.; Sky Courier Network; Creative Courier; Special Courier; Graf Air Freight, Inc.; Ad Com Express and American Check Co. The flights ran on a weeknight basis. The publications which Midwestern carried were generally either dailies or weeklies.[2] In early 1985 Jack Collura, a Midwestern employee, mailed solicitations to potential customers, informing them of Midwestern's rates. Early in 1985, before the period of its transport flights, Midwestern endeavored to prepare an application for and to operate with a certificate pursuant to 14 CFR 135, but such a certificate was not obtained.

I. MIDWESTERN

As stated above, I will address first the motion and cross-motion for summary judgment concerning defendant Midwestern, since the liability of the other named defendants, if any, would stem from whatever involvement they may have had with Midwestern's aircraft operations.

The purpose of the summary judgment rule is the avoidance of the delay and expense of an unnecessary trial where the circumstances of the case, the applicable law and the facts, are ripe for such procedure. *Goodman v. Mead Johnson Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977); *Celotex Corp. v. Catrett*, 477 U.S. 317, ___, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265, 276 (1986). *Fed.R.Civ.P.* 56 provides for the granting of summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, to-

---

**1.** These sections prohibit the "carriage in air commerce of persons or property for compensation or hire", 14 CFR § 135.1(a)(3), without an air carrier operating certificate and appropriate operations specifications. I will refer to the pertinent regulatory language in the legal analysis portion of this Report and Recommendation.

**2.** Neither Edrei Communications nor any of its subsidiaries produces any daily publications.

gether with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." As the moving party bears the burden of demonstrating that there is clearly no genuine issue of material fact, all doubts will be resolved against the moving party. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Anderson v. Liberty Lobby*, 477 U.S. 242, ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 216 (1986).

The crux of the government's claim against Midwestern is that the latter's aircraft operations fell within the purview of 14 CFR 135 and its requirements for obtaining a certificate demonstrating compliance therein. Midwestern asserts that its aeronautic activities fell within the safe harbor of 14 CFR 91.181, thus exempting it from the requisites of Part 135 ("135"). It is undisputed that, under the regulations, an operation governed by Part 91.181 ("91.-181") is immune from the demands, expenses and enforcement of 135. It is also undisputed that Midwestern did not comply with, nor did it secure the certificate mandated by 135. Thus, if the Court finds that Midwestern's flights were appropriate under 91.181, Midwestern's motion for summary judgment must be granted. Conversely, if the undisputed facts lead to the conclusion that Midwestern's activities were governed by 135, then the government's cross-motion for summary judgment frames the proper outcome.

Midwestern argues that its operations are covered by the umbrella of 91.181, in particular subsection (b)(7):

> The carriage of property (other than mail) on an airplane operated by a person in the furtherance of a business or employment (other than transportation by air) when the carriage is within the scope of, and incidental to, that business or employment and no charge, assessment,

or fee is made for the carriage other than those specified in paragraph (d) of this section [charges for costs and fees incurred in the flight].[3]

■ Midwestern urges that its air operations were in conformity with the above quoted regulation, *i.e.*, incidental to its business (other than air transportation), rather than "for compensation or hire" in air commerce pursuant to 135 and 49 U.S.C. § 1430(a). The defendant maintains that its air operations were, in fact, incidental to the publishers' services business described in the affidavit of defendant Michael Edrei. This publishers' services business was to assist publishers in coordinating their production and distribution. Whatever services may have been contemplated *in futuro*, the only operation ever effectuated was the delivery of unrelated publishers' products by air transport. Midwestern was the vehicle for this transport.

■ Even if there was a broad plan for a multitude of services to publishers, Edrei's affidavit only shows a service based on air transport. And, even if this Court were to defer a conclusion on the potential operations of Mr. Edrei's conceived publishers' services business, it cannot be said that Midwestern operated other than as an air transporter business. It is immaterial that the operations in question did not yield a profit, or that Edrei/Midwestern held a good faith belief in their compliance with the regulations. *United States v. Caribbean Ventures Ltd.*, 387 F.Supp. 1256, 1260 (D.N.J.1974).[4] In *Caribbean Ventures*, also involving a carrier's reliance on Part 91, Judge Lacey cited another court's finding of common carrier status and the objective criteria test:

> The test which the Board applies is an objective one, relying upon what the carrier actually does rather than upon the label which the carrier attached to its activity or the purpose which motivates

---

**3.** In its brief, defendant also cites subsection 91.181(b)(5). That subsection restricts the property to be carried to the operator or a related corporate entity, and will not cover the carriage of property of numerous other businesses as appears in this case.

**4.** For a finding of liability there need be no finding of intent. Such a determination may go to damages, but is not required for civil penalties under 49 U.S.C. § 1471. *FAA v. Landy*, 705 F.2d 624, 632 (2d Cir.1983).

it....it is immaterial that the service offered will be attractive only to a limited group; or that it may be performed pursuant to special contract. It is also immaterial that in terms of the carrier's own bookkeeping the transportation may be furnished at cost, at a loss, or even without charge.

*Las Vegas Hacienda, Inc. v. C.A.B.*, 298 F.2d 430, 434 (9th Cir.1962), cited in *Caribbean Ventures, Ltd., supra* at 1260.

Based on the clearly established fact that Midwestern carried "property for compensation or hire" as an air transporter and not incidental to or within the scope of any existing business, I find that 135 is applicable to the operations of Midwestern. And, since it is uncontested that Midwestern did not comply with or secure the certificate required by 135, I recommend that Midwestern's motion for summary judgment be denied and that the cross-motion of the United States be granted against defendant Midwestern.

## II. E.C.C. AND EDREI COMMUNICATIONS

Both the plaintiff and defendants agree that the key word in the determination of whether liability may be imposed against any other defendants for failure to comply with the appropriate safety regulations promulgated by the Federal Aviation Administration, is in the aircraft's "operations" as defined in 49 U.S.C. § 1301(31): "any person who causes or authorizes the operation of an aircraft, whether with or without the right of legal control (in the capacity of owner, lessee or otherwise) of the aircraft shall be deemed to be engaged in the operation of aircraft within the meaning of this act."

To decide whether summary judgment is appropriate for or against E.C.C. and Edrei Communications, I must determine whether the undisputed facts lead to a finding that these defendants caused or authorized or did not cause or authorize the illegal operations engaged in by Midwestern. Michael Edrei is the sole shareholder of Edrei Communications, which is the parent company and sole shareholder of E.C.C. and of Midwestern. (Edrei aff. at 1). Edrei has stated further, without clear contradiction by the government, that Edrei Communications, although the parent company of the other corporate defendants, had no involvement in any of the operations of the aircraft which are the subject of this matter; E.C.C.'s involvement with Midwestern consisted only of the subleasing of an aircraft, and not in the operations of that aircraft. (Edrei aff. at 2).

That Edrei Communications was the sole shareholder of Midwestern does not make the parent corporation identical to the subsidiary, nor does Michael Edrei's use of the parent company's stationary or his planning of an intercorporate business strategy make Edrei Communications responsible for the operations of Midwestern. The fact that Edrei Communications guaranteed E.C.C.'s obligations under the aircraft lease, which aircraft was subleased to Midwestern, does not successfully bootstrap liability as the plaintiff avers.

Even if Michael Edrei's activities relating to Midwestern's violations subject him to liability, Edrei Communications is not thereby also liable, merely because it was to benefit from the air transport, unless plaintiff shows engagement in the operations. The facts do not allow that conclusion. I therefore recommend the granting of summary judgment in favor of Edrei Communications.

E.C.C.'s relation with Midwestern appears to be closer than that of its parent company. The plaintiff has shown, quoting from Mr. Edrei's affidavit, that this defendant's sole purpose was to purchase or lease vehicles for market distribution and to lease said vehicles to Midwestern; further, the only vehicle leased was the aircraft operated unlawfully by Midwestern. (Edrei dep. at 6–8, cited in plaintiff's memorandum at 10). While not in itself proving engagement in the operations of Midwestern, the singularity of the acknowledged purpose and use of its sole asset, the aircraft lease, raises a jury question on the liability of E.C.C. *See F.A.A. v. Landy*, 705 F.2d 624, 631 (2d Cir.1983).

▉ Pursuant to the definition of operation cited in 49 U.S.C. § 1301(31) even a party lacking legal control of the aircraft may still be held to be an operator; thus, a lessor, who exercises some control, may be found liable for a lessee's violations if the facts implicate the lessor in the operation. *See Aircrane, Inc. v. Butterfield,* 369 F.Supp. 598, 611–12 (E.D.Pa.1974) (although lease provided for lessee to operate aircraft, pilot and flight crew were associated with defendant lessor and related defendants, all of which effectively controlled the operation); *F.A.A. v. Landy, supra,* 705 F.2d at 632 (facts established that lessor and crew supplier kept operational control). At the summary judgment stage it is not the judge's function "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986). I believe there is a factual question regarding E.C.C.'s involvement with Midwestern's flights, and I therefore recommend the denial of both parties' motions for summary judgment as to E.C.C.

### III. MICHAEL EDREI

Michael Edrei is undeniably the personal force behind the activities of his companies, including Midwestern. Defendants concede that he was involved in the day-to-day operations and "oversaw" the activities of Midwestern, but assert that he is immune from liability because he acted only in his capacity as a corporate officer. (Defendants' Brief at 10–11).

There is a time honored body of law upholding the protections of the corporate form, which has at times served to protect individuals from liability in government actions to prosecute regulatory violations. *See Johnson Oil Co., Inc. v. United States Dept. of Energy,* 690 F.2d 191, 202 (Temp. Emergency Court of Appeals 1982) (general rule of immunity of stockholders upheld absent explicit statutory provision); *United States v. Sexton Cove Estates,* 526 F.2d 1293, 1300 (5th Cir.1976) (corporate officer may not be held civilly liable for corporate violation of the Rivers and Harbors Act unless either the Act itself authorizes such liability, or there is sufficient proof to permit negation of the corporate form). *But, see United States v. Pollution Abatement Services of Oswego, Inc.,* 763 F.2d 133, 134–35 (2d Cir.1985) (citing Congressional intent to hold "persons" liable for violations, no reason exists to shield corporate officers from civil liability when directly involved in unlawful activity).

In the present case, although not citing Judge Kaufman's holding in *United States v. Pollution Abatement Services of Oswego, Inc., supra,* plaintiff relies heavily on similar congressional language stating that "[a]ny person who causes or authorizes the operation of the aircraft ... shall be deemed to be engaged in the operation of the aircraft." 49 U.S.C. § 1301(31). Person means "[a]ny individual, firm, copartnership, corporation, company, association ... or other similar representative thereof." 49 U.S.C. § 1301(32) (Supp.1987). The government urges the court to apply this definition of "person" to include Michael Edrei, as an individual liable for causing aircraft operations proscribed by law, and thereby subject to civil penalties prescribed by 49 U.S.C. § 1471.

In adopting the government's construction of the statutory definition, I find guidance in cases involving FAA violations—both from their holdings and from their approach to applying the relevant law. "[T]he fact is that it was long ago determined that the public had to be protected by the intricately woven federal statutory and regulatory fabric. The spirit underlying this regulation [Part 121] [5] requires a generous interpretation rather than a restrictive one." *United States v. Caribbean Ventures, Ltd.,* 387 F.Supp. 1256, 1262 (D.N.J.1974).[6]

---

**5.** This section, like current Part 135, called for an air carrier for compensation or hire to obtain the requisite operating certificate.

**6.** Just as did Judge Lacey in *Caribbean Ventures,* Judge Kaufman, in *Pollution Abatement Services, supra,* 763 F.2d at 135, cited an expansive

In granting the government its request for injunctive relief, the Court in *Caribbean Ventures* found a likelihood that both the defendant corporation and its principals would be found liable for violations of FAA regulations. *Id.* at 1261. *See also Aircrane, Inc. v. Butterfield*, 369 F.Supp. 598, 613 (E.D.Pa.1974) (both the corporate defendants and the individual dominating them through corporate ownership enjoined from unlawful operating of aircraft). More recently in *United States v. Intercon Leasing, Inc.*, 617 F.Supp. 323 (S.D.Fla. 1985), the corporate defendant and its president were both held liable for violations similar to those alleged in the instant case.

█ Based on the clear statutory and regulatory language cited above, as well as an undisturbed line of FAA cases, I find that Michael Edrei's corporate clothing does not shield him from liability for Midwestern's operations. Furthermore, it has not been contested that Edrei was involved in and directed all aspects of Midwestern's operations. Accordingly, I recommend that as to defendant Michael Edrei, defendants' motion for summary judgment be denied, and that the plaintiff's cross-motion for summary judgment be granted.

reading of remedial legislation as a basis for his            holding.