810 F.2d 726
 25 ERC 1385, 55 USLW 2376, 17 Envtl.
L. Rep. 20,603
 UNITED STATES of America, Appellee,
v.
NORTHEASTERN PHARMACEUTICAL & CHEMICAL CO., INC., a
Dissolved Delaware Corporation, Edwin Michaels and
John W. Lee, Appellants.
Ronald Mills and Syntex Agribusiness, Inc.
UNITED STATES of America, Appellant,
v.
NORTHEASTERN PHARMACEUTICAL & CHEMICAL CO., INC., a
Dissolved Delaware Corporation, Edwin Michaels and
John W. Lee, Appellees,
Ronald Mills and Syntex Agribusiness, Inc.
 Nos. 84-1837, 84-1853.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 25, 1985.
Decided Dec. 31, 1986.
Rehearing and Rehearing En Banc Denied April 8, 1987.
 
 Ted L. Perryman, St. Louis, Mo., for (NEPACCO) and George Freeman, Richmond, Va., for (Syntex Agribusiness, Inc.).
 David C. Shilton, Washington, D.C., for appellee.
 Before McMILLIAN, JOHN R. GIBSON and BOWMAN, Circuit Judges.
 McMILLIAN, Circuit Judge.
 
 
 1
 Northeastern Pharmaceutical & Chemical Co. (NEPACCO), Edwin Michaels and John W. Lee appeal from a final judgment entered in the District Court[1] for the Western District of Missouri finding them and Ronald Mills jointly and severally liable for response costs incurred by the government after December 11, 1980, and all future response costs relative to the cleanup of the Denney farm site that are not inconsistent with the national contingency plan (NCP) pursuant to Secs. 104, 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. Secs. 9604, 9607 (appeal No. 84-1837). For reversal, appellants argue the district court erred in (1) applying CERCLA retroactively, (2) finding Michaels and Lee individually liable, (3) failing to dismiss NEPACCO as a party defendant, (4) awarding response costs absent affirmative proof that the response costs were consistent with the NCP, (5) refusing to reduce the award of response costs by the amount of a prior settlement, and (6) denying appellants a jury trial.
 
 
 2
 The United States cross-appeals from that part of the district court judgment denying recovery of response costs incurred before December 11, 1980, and finding appellants and Mills were not liable for response costs pursuant to Sec. 7003(a) of the Resource Conservation and Recovery Act of 1976 (RCRA) (also known as the Solid Waste Disposal Act), as amended, 42 U.S.C.A. Sec. 6973(a) (West Supp.1986) (appeal No. 84-1853). For reversal the government argues the district court erred in (1) finding the government could not recover response costs incurred before the effective date of CERCLA, December 11, 1980, and (2) finding appellants and Mills were not liable for response costs under RCRA Sec. 7003(a), 42 U.S.C.A. Sec. 6973(a) (West Supp.1986).
 
 
 3
 For the reasons discussed below, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.
 
 I. FACTS
 
 4
 The following statement of facts is taken in large part from the district court's excellent memorandum opinion, United States v. Northeastern Pharmaceutical & Chemical Co., 579 F.Supp. 823 (W.D.Mo.1984) (NEPACCO ). NEPACCO was incorporated in 1966 under the laws of Delaware; its principal office was located in Stamford, Connecticut. Although NEPACCO's corporate charter was forfeited in 1976 for failure to maintain an agent for service of process, NEPACCO did not file a certificate of voluntary dissolution with the secretary of state of Delaware. In 1974 its corporate assets were liquidated, and the proceeds were used to pay corporate debts and then distributed to the shareholders. Michaels formed NEPACCO, was a major shareholder, and was its president. Lee was NEPACCO's vice-president, the supervisor of its manufacturing plant located in Verona, Missouri, and also a shareholder. Mills was employed as shift supervisor at NEPACCO's Verona plant.
 
 
 5
 From April 1970 to January 1972 NEPACCO manufactured the disinfectant hexachlorophene at its Verona plant. NEPACCO leased the plant from Hoffman-Taff, Inc.; Syntex Agribusiness, Inc. (Syntex), is the successor to Hoffman-Taff. Michaels and Lee knew that NEPACCO's manufacturing process produced various hazardous and toxic byproducts, including 2,4,5-trichlorophenol (TCP), 2,3,7,8-tetrachlorodibenzo-p-dioxin (TCDD or dioxin), and toluene. The waste byproducts were pumped into a holding tank which was periodically emptied by waste haulers. Occasionally, however, excess waste byproducts were sealed in 55-gallon drums and then stored at the plant.
 
 
 6
 In July 1971 Mills approached NEPACCO plant manager Bill Ray with a proposal to dispose of the waste-filled 55-gallon drums on a farm owned by James Denney located about seven miles south of Verona. Ray visited the Denney farm and discussed the proposal with Lee; Lee approved the use of Mills' services and the Denney farm as a disposal site. In mid-July 1971 Mills and Gerald Lechner dumped approximately 85 of the 55-gallon drums into a large trench on the Denney farm (Denney farm site) that had been excavated by Leon Vaughn. Vaughn then filled in the trench. Only NEPACCO drums were disposed of at the Denney farm site.
 
 
 7
 In October 1979 the Environmental Protection Agency (EPA) received an anonymous tip that hazardous wastes had been disposed of at the Denney farm. Subsequent EPA investigation confirmed that hazardous wastes had in fact been disposed of at the Denney farm and that the site was not geologically suitable for the disposal of hazardous wastes. Between January and April 1980 the EPA prepared a plan for the cleanup of the Denney farm site and constructed an access road and a security fence. During April 1980 the EPA conducted an on-site investigation, exposed and sampled 13 of the 55-gallon drums, which were found to be badly deteriorated, and took water and soil samples. The samples were found to contain "alarmingly" high concentrations of dioxin, TCP and toluene.
 
 
 8
 In July 1980 the EPA installed a temporary cap over the trench to prevent the entry and run-off of surface water and to minimize contamination of the surrounding soil and groundwater. The EPA also contracted with Ecology & Environment, Inc., for the preparation of a feasibility study for the cleanup of the Denney farm site. Additional on-site testing was conducted. In August 1980 the government filed its initial complaint against NEPACCO, the generator of the hazardous substances; Michaels and Lee, the corporate officers responsible for arranging for the disposal of the hazardous substances; Mills, the transporter of the hazardous substances; and Syntex, the owner and lessor of the Verona plant, seeking injunctive relief and reimbursement of response costs pursuant to RCRA Sec. 7003, 42 U.S.C. Sec. 6973 (count I). In September 1983 the feasibility study was completed.
 
 
 9
 In the meantime the EPA had been negotiating with Syntex about Syntex's liability for cleanup of the Denney farm site. In September 1980 the government and Syntex entered into a settlement and consent decree. Pursuant to the terms of the settlement, Syntex would pay $100,000 of the government's response costs and handle the removal, storage and permanent disposal of the hazardous substances from the Denney farm site. The EPA approved Syntex's proposed cleanup plan, and in June 1981 Syntex began excavation of the trench. In November 1981 the site was closed. The 55-gallon drums are now stored in a specially constructed concrete bunker on the Denney farm. The drums as stored do not present an imminent and substantial endangerment to health or the environment; however, no plan for permanent disposal has been developed, and the site will continue to require testing and monitoring in the future.
 
 
 10
 In August 1982 the government filed an amended complaint adding counts for relief pursuant to CERCLA Secs. 104, 106, 107, 42 U.S.C. Secs. 9604, 9606, 9607 (counts II and III). CERCLA was enacted after the filing of the initial complaint. In September 1982 the district court granted partial summary judgment in favor of the government, holding NEPACCO had the capacity to be sued under Delaware law. In September 1983 the district court denied the defense demand for a jury trial, holding the government's request for recovery of its response costs was comparable to restitution and thus an equitable remedy. The trial was conducted during October 1983. The district court filed its memorandum opinion in January 1984.
 
 II. DISTRICT COURT DECISION
 
 11
 The district court found that dioxin, hexachlorophene, TCP, TCB (1,2,3,5-tetrachlorobenzene, also found at the Denney farm site), and toluene have high levels of toxicity at low-dose levels and are thus "hazardous substances" within the meaning of RCRA Sec. 1004(5), 42 U.S.C. Sec. 6903(5), and CERCLA Sec. 101(14), 42 U.S.C. Sec. 9601(14). 579 F.Supp. at 832, 845; see also United States v. Vertac Chemical Corp., 489 F.Supp. 870, 874-79 (E.D.Ark.1980) (dioxin). The district court also found there was a substantial likelihood that the environment and human beings would be exposed to the hazardous substances that had been disposed of at the Denney farm site. 579 F.Supp. at 846 & n. 28 (discussing meaning of "imminent and substantial endangerment" standard). A state geologist testified the Denney farm site is located in an area in which substances rapidly move through the soil and into the groundwater and, although no dioxin had been found in the water in nearby wells, dioxin had been found as far as 30 inches beneath the soil in the trench. Id. at 832-33.
 
 A. RCRA Findings
 
 12
 The district court held that RCRA Sec. 7003(a), 42 U.S.C. Sec. 6973(a), requires a finding of negligence in order to hold past off-site generators and transporters liable for response costs, id. at 836, and thus RCRA did not apply to past non-negligent off-site generators and transporters of hazardous substances. Id. at 834-37; accord United States v. A & F Materials Co., 578 F.Supp. 1249, 1258 (S.D.Ill.1984); United States v. Waste Industries, Inc., 556 F.Supp. 1301, 1308 (E.D.N.C.1982), rev'd, 734 F.2d 159 (4th Cir.1984); United States v. Wade, 546 F.Supp. 785, 790 (E.D.Pa.1982), appeal dismissed, 713 F.2d 49 (3d Cir.1983); United States v. Midwest Solvent Recovery, Inc., 484 F.Supp. 138, 144 (N.D.Ind.1980).
 
 B. CERCLA Findings
 
 13
 CERCLA Sec. 104, 42 U.S.C. Sec. 9604, authorizes the EPA to take direct "response" actions, which can include either short-term "removal" actions or long-term "remedial" actions or both, pursuant to the NCP, with funds from the "Superfund,"[2] and to seek recovery of response costs from responsible parties pursuant to CERCLA Sec. 107, 42 U.S.C. Sec. 9607, in order to replenish the Superfund. The EPA can also use CERCLA Sec. 106, 42 U.S.C. Sec. 9606, to seek injunctions to compel responsible parties to clean up hazardous waste sites that constitute an "imminent and substantial endangerment" to health and the environment. In the present case, count II sought injunctive relief pursuant to CERCLA Sec. 106, 42 U.S.C. Sec. 9606, and count III sought recovery of the government's past and future response costs pursuant to CERCLA Secs. 104, 107, 42 U.S.C. Secs. 9604, 9607.
 
 
 14
 The district court applied CERCLA retroactively, 579 F.Supp. at 839, but held the government could not recover response costs incurred before the effective date of CERCLA, December 11, 1980. Id. at 841. The district court also held CERCLA imposes a standard of strict liability, id. at 843-44, and that responsible parties can be held jointly and severally liable, id. at 844-45.
 
 
 15
 The district court also found NEPACCO liable as an "owner or operator" pursuant to CERCLA Sec. 107(a)(1), 42 U.S.C. Sec. 9607(a)(1). Id. at 847. With respect to the individual defendants, the district court found Mills liable as a "person who ... accepted any hazardous substances for transport to disposal ... sites selected by such person," pursuant to CERCLA Sec. 107(a)(4), 42 U.S.C. Sec. 9607(a)(4). Id. Mills was not represented by counsel in the district court and has not appealed. The district court also found Lee liable as an "owner or operator" pursuant to CERCLA Sec. 107(a)(1), 42 U.S.C. Sec. 9607(a)(1), and as a "person who by contract, agreement, or otherwise ... arranged with a transporter for transport for disposal ... of hazardous substances," pursuant to CERCLA Sec. 107(a)(3), 42 U.S.C. Sec. 9607(a)(3). Id. at 847-49. The district court found Michaels liable as a person who arranged for the transport and disposal of hazardous substances pursuant to CERCLA Sec. 107(a)(3), 42 U.S.C. Sec. 9607(a)(3). Id. at 849 n. 31. The liability of NEPACCO, Lee, Michaels, and Mills was joint and several. Id. at 849-50.
 
 
 16
 The district court further found the government's right to recovery of response costs was very broad and included litigation costs, attorney's fees, future response costs, and prejudgment interest, and that the defendants in an action by the government for recovery of response costs had the burden of proving that the government's response costs were inconsistent with the NCP. Id. at 850-52. NEPACCO, Michaels and Lee have appealed. Mills has not appealed. The government filed a cross-appeal. Syntex filed an amicus curiae brief, generally in support of appellants' retroactivity arguments.[3]
 
 III. CERCLA--RETROACTIVITY
 A. Application of CERCLA to Pre-1980 Acts
 
 17
 Appellants first argue the district court erred in applying CERCLA retroactively, that is, to impose liability for acts committed before its effective date, December 11, 1980. CERCLA Sec. 302(a), 42 U.S.C. Sec. 9652(a), provides that "[u]nless otherwise provided, all provisions of this chapter shall be effective on December 11, 1980." Appellants argue that CERCLA should not apply to pre-enactment conduct that was neither negligent nor unlawful when committed. Appellants argue that all the conduct at issue occurred in the early 1970s, well before CERCLA became effective. Appellants also argue that there is no language supporting retroactive application in CERCLA's liability section, CERCLA Sec. 107, 42 U.S.C. Sec. 9607, or in the legislative history. Appellants further argue that because CERCLA imposes a new kind of liability, retroactive application of CERCLA violates due process and the taking clause. We disagree.
 
 
 18
 The district court correctly found Congress intended CERCLA to apply retroactively. Id. at 839. We acknowledge there is a presumption against the retroactive application of statutes. See United States v. Security Industrial Bank, 459 U.S. 70, 79, 103 S.Ct. 407, 413, 74 L.Ed.2d 235 (1982). We hold, however, that CERCLA Sec. 302(a), 42 U.S.C. Sec. 9652(a), is "merely a standard 'effective date' provision that indicates the date when an action can first be brought and when the time begins to run for issuing regulations and doing other future acts mandated by the statute." United States v. Shell Oil Co., 605 F.Supp. 1064, 1075 (D.Colo.1985); cf. Von Allmen v. Connecticut Teachers Retirement Board, 613 F.2d 356, 359-60 (2d Cir.1979) (veterans statute).
 
 
 19
 Although CERCLA does not expressly provide for retroactivity, it is manifestly clear that Congress intended CERCLA to have retroactive effect. The language used in the key liability provision, CERCLA Sec. 107, 42 U.S.C. Sec. 9607, refers to actions and conditions in the past tense: "any person who at the time of disposal of any hazardous substances owned or operated," CERCLA Sec. 107(a)(2), 42 U.S.C. Sec. 9607(a)(2), "any person who ... arranged with a transporter for transport for disposal," CERCLA Sec. 107(a)(3), 42 U.S.C. Sec. 9607(a)(3), and "any person who ... accepted any hazardous substances for transport to ... sites selected by such person," CERCLA Sec. 107(a)(4), 42 U.S.C. Sec. 9607(a)(4). See, e.g., United States v. Conservation Chemical Co., 619 F.Supp. 162, 220 (W.D.Mo.1985); United States v. Shell Oil Co., 605 F.Supp. at 1069-73; United States v. South Carolina Recycling & Disposal, Inc., 20 Env't Rep. Cases (BNA) 1753, 1760-62 (D.S.C.1984)[4]; United States v. A & F Materials Co., 578 F.Supp. at 1259; United States v. Price, 577 F.Supp. 1103, 1111-12 (D.N.J.1983); Ohio ex rel. Brown v. Georgeoff, 562 F.Supp. 1300, 1312 (N.D.Ohio 1983); United States v. Outboard Marine Corp., 556 F.Supp. 54, 57 (N.D.Ill.1982); United States v. Reilly Tar & Chemical Corp., 546 F.Supp. 1100, 1113-14 (D.Minn.1982); see generally Developments in the Law--Toxic Waste Litigation, 99 Harv.L.Rev. 1498 (1986) (Developments ).
 
 
 20
 Further, the statutory scheme itself is overwhelmingly remedial and retroactive. CERCLA authorizes the EPA to force responsible parties to clean up inactive or abandoned hazardous substance sites, CERCLA Sec. 106, 42 U.S.C. Sec. 9606, and authorizes federal, state and local governments and private parties to clean up such sites and then seek recovery of their response costs from responsible parties, CERCLA Secs. 104, 107, 42 U.S.C. Secs. 9604, 9607. In order to be effective, CERCLA must reach past conduct. CERCLA's backward-looking focus is confirmed by the legislative history. See generally H.R.Rep. No. 1016, 96th Cong., 2d Sess., reprinted in 1980 U.S. Code Cong. & Ad. News 6119 (CERCLA House Report). Congress intended CERCLA "to initiate and establish a comprehensive response and financing mechanism to abate and control the vast problems associated with abandoned and inactive hazardous waste disposal sites." Id. at 22, 1980 U.S. Code Cong. & Ad. News at 6125.
 
 
 21
 The district court also correctly found that retroactive application of CERCLA does not violate due process. 579 F.Supp. at 840-41. Appellants argue CERCLA creates a new form of liability that is designed to deter and punish those who, according to current standards, improperly disposed of hazardous substances in the past. We disagree.
 
 
 22
 It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way. [L]egislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations. This is true even though the effect of the legislation is to impose a new duty or liability based on past acts.
 
 
 23
 Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976) (citations omitted). Due process is satisfied "simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose." Pension Benefit Guaranty Corp. v. R.A. Gray & Co., 467 U.S. 717, 730, 104 S.Ct. 2709, 2718, 81 L.Ed.2d 601 (1984). "Provided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches...." Id. at 729, 104 S.Ct. at 2718.
 
 
 24
 Appellants failed to show that Congress acted in an arbitrary and irrational manner. Cleaning up inactive and abandoned hazardous waste disposal sites is a legitimate legislative purpose, and Congress acted in a rational manner in imposing liability for the cost of cleaning up such sites upon those parties who created and profited from the sites and upon the chemical industry as a whole, NEPACCO, 579 F.Supp. at 841. See United States v. Ottati & Goss, Inc., 630 F.Supp. 1361, 1398-99 (D.N.H.1985); United States v. Conservation Chemical Co., 619 F.Supp. at 221-22; United States v. Shell Oil Co., 605 F.Supp. at 1072-73; United States v. South Carolina Recycling & Disposal, Inc., 20 Env't Rep. Cases (BNA) at 1761-62; see generally Developments, 99 Harv.L.Rev. at 1556-62. We hold retroactive application of CERCLA to impose liability upon responsible parties for acts committed before the effective date of the statute does not violate due process.
 
 
 25
 Appellants also summarily argue retroactive application of CERCLA constitutes an unconstitutional taking of property. We disagree. First, because appellants do not have a property interest in the Denney farm site, we question appellants' standing to raise a taking issue. Second, we hesitate to characterize the government's cleanup as a taking at all; the government's cleanup of the Denney farm site has not deprived the property owner of any property interest. See United States v. Conservation Chemical Co., 619 F.Supp. at 216-17. Instead, the government's cleanup of the site abated an "imminent and substantial endangerment" to the public health and the environment, thus eliminating a public nuisance and restoring value to the property by removing the hazardous substances. See generally Developments, 99 Harv.L.Rev. at 1564-65 & nn. 111, 114, citing Blaymore, Retroactive Application of Superfund: Can Old Dogs Be Taught New Tricks?, 12 B.C. Envtl.Aff.L.Rev. 1, 43-46 (1985).
 
 B. Application of CERCLA to Pre-1980 Costs
 
 26
 Related to the question of CERCLA's application to pre-1980 acts is the question whether the government can recover response costs incurred prior to CERCLA's effective date. This issue is raised by the government's cross-appeal. The district court held that the government could not recover its pre-enactment response costs. NEPACCO, 579 F.Supp. at 841-43. The government argues on cross-appeal that the district court erred in denying the government recovery of its pre-CERCLA response costs. The government argues a close examination of the statutory language and scheme, legislative history and legislative purpose supports retroactive liability for pre-enactment response costs.
 
 
 27
 The district court concluded that because of the magnitude of the potential liability for pre-enactment response costs, "it is difficult to believe that if Congress had intended to make the defendants liable for pre-CERCLA expenses, it would not have said so explicitly and clearly in the statutory language, committee reports or floor debates." Id. at 843; accord United States v. Wade, 20 Env't Rep. Cases (BNA) 1849, 1850-51 (E.D.Pa.1984). The district court found that CERCLA itself did not clearly specify whether pre-enactment response costs were recoverable because the "statutory language 'all costs ... incurred' [in CERCLA Sec. 107(a),] 42 U.S.C. Sec. 9607(a), is susceptible to varying interpretations, either all costs incurred regardless of when incurred or all costs incurred from the date of enactment." Id. 579 F.Supp. at 842. The district court noted that "[t]he [NCP] makes no provision for the recovery of pre-CERCLA response costs," id., citing 40 C.F.R. Part 300 (1983), and that the "time limitations placed in sections 104(c)(3), 107(f) and 111(d)(1) [,42 U.S.C. Secs. 9607(c)(3), (f), 9611(d),] could equally indicate that these are the only provisions in which pre-CERCLA costs may be recoverable." Id. The district court also found the legislative history "unpersuasive" because recovery of pre-CERCLA response costs was not discussed at all in the House, id. at 843 n. 21, and the only references to authority to recover pre-CERCLA response costs in the Senate, Sec. 4(a)(2) and Sec. 4(n) of S. 1480, were deleted and not enacted. Id. at 843.
 
 
 28
 After the present case was decided, this issue was exhaustively examined and resolved in favor of recovery of pre-CERCLA response costs in United States v. Shell Oil Co., 605 F.Supp. at 1072-79. We find the analysis in United States v. Shell Oil Co. to be convincing. Accord Mayor of Boonton v. Drew Chemical Corp., 621 F.Supp. 663, 668-69 (D.N.J.1985); United States v. Ward, 618 F.Supp. 884, 989-99 (E.D.N.C.1985).
 
 
 29
 In United States v. Shell Oil Co. the federal government sued under CERCLA Secs. 104, 107, 42 U.S.C. Secs. 9604, 9607, to recover the costs it had incurred and will incur in cleaning up the heavily contaminated Rocky Mountain Arsenal located outside of Denver, Colorado. The Rocky Mountain Arsenal has been owned by the United States since 1942 and was used by the United States Department of the Army for manufacturing and handling various chemicals and munitions. In addition, since 1947, Shell Oil and its predecessors had leased part of the Arsenal for the manufacture of pesticides, herbicides and other chemicals. The Army's wastes and all or some of Shell's wastes were disposed of through waste disposal systems built and operated by the Army. The waste disposal systems repeatedly failed and released the commingled wastes into the environment, severely contaminating the Arsenal and threatening the surrounding environment. In 1975 the Army began to clean up the Arsenal. By December 1, 1983, before CERCLA was enacted, the Army had incurred about $48 million in response costs and, by January 1984, had proposed four alternative cleanup programs, with estimated future response costs ranging from $210 million to $1.8 billion, and recommended the program estimated to cost $360 million. Shell argued, among other things, that CERCLA did not authorize recovery of the Army's pre-enactment response costs.
 
 
 30
 The Shell Oil court disagreed and held CERCLA authorized recovery of pre-enactment response costs. 605 F.Supp at 1079. First, the Shell Oil court agreed with the district court in the present case that "congressional intent to either impose or withhold liability for response costs incurred before CERCLA cannot be divined from the verb tenses in [CERCLA] Sec. 107(a) [,42 U.S.C. Sec. 9607(a) ]." Id. at 1073. The Shell Oil court examined the grammatical structure of CERCLA Sec. 107(a), 42 U.S.C. Sec. 9607(a), and concluded that each party's argument cancelled the other out. Id., citing Ohio ex rel. Brown v. Georgeoff, 562 F.Supp. at 1309-10. Shell had argued that "use of the imperative 'shall' ... indicate[d] [that Congress] intended prospective operation of the liability provision." 605 F.Supp. at 1073. The government had argued, however, that "all the other verbs in [CERCLA] Sec. 107(a) [, 42 U.S.C. Sec. 9607(a),] including 'costs ... incurred,' [were] in the past tense (with the exception of 'accepts').... [and thus should] be interpreted to include pre-enactment events." Id.
 
 
 31
 The Shell Oil court did not address the NCP's failure to provide for recovery of pre-CERCLA response costs. The Shell Oil court, however, considered and rejected the related argument that the requirement in CERCLA Sec. 107(a), 42 U.S.C. Sec. 9607(a), that recoverable costs were those costs "not inconsistent with the [NCP]" indicated Congress' intent that liability for costs was prospective only. The Shell Oil court concluded the "[t]he consistency requirement addresses the nature of the response action for which costs can be recovered, not the timing of the action." Id. at 1074. The Shell Oil court also refused to interpret the effective date provision, CERCLA Sec. 302(a), 42 U.S.C. Sec. 9652(a), to limit liability to pre-enactment response costs. Id. at 1075.
 
 
 32
 Because CERCLA Secs. 107(c)(3), 107(f) and 111(d), 42 U.S.C. Secs. 9607(c)(3), (f), 9611(d), contain express time limitations, the absence of any time limitations in CERCLA Sec. 107(a), 42 U.S.C. Sec. 9607(a), arguably supports only prospective liability for response costs. CERCLA Sec. 107(c)(3), 42 U.S.C. Sec. 9607(c)(3), provides a state with a credit against its share of future maintenance costs for its documented cleanup costs expended after January 1, 1978, and before December 11, 1980, for CERCLA Sec. 111, 42 U.S.C. Sec. 9611, actions. This provision specifies the funding relationship between the federal government and individual states for future maintenance costs and does not address whether the government can recover pre-CERCLA response costs from responsible parties.
 
 
 33
 CERCLA Sec. 107(a)(4)(A)-(C), 42 U.S.C. Sec. 9607(a)(4)(A)-(C), sets forth three types of liability: (A) response costs incurred by the United States or a state that are not inconsistent with the NCP, (B) any other necessary response costs incurred by any other person that are consistent with the NCP, and (C) natural resource damages. By separately considering the place of each type of liability in the statutory scheme, we can discern Congressional intent with respect to recovery of pre-enactment response costs. CERCLA Secs. 107(f), 111(d)(1), 42 U.S.C. Secs. 9607(f), 9611(d)(1), preclude recovery of natural resource damages and claims for such damages against the Superfund if the release of hazardous substances and the resulting natural resource injury occurred wholly before CERCLA's enactment. The Shell Oil court noted the provisions authorizing recovery of response costs by the government, CERCLA Sec. 107(a)(4)(A), 42 U.S.C. Sec. 9607(a)(4)(A), and by any other person, CERCLA Sec. 107(a)(4)(B), 42 U.S.C. Sec. 9607(a)(4)(B), do not contain time limitations and decided "[i]n order to give meaning to these [time limitation] provisions [in CERCLA Secs. 107(f), 111(d)(1), 42 U.S.C. Secs. 9607(f), 9611(d)(1) ], one must assume that liability for other damages--costs of removal or remedial action incurred by the United States or a State (Sec. 107(a)(4)(A)), and other necessary response costs incurred by any other person (Sec. 107(a)(4)(B))--is not so limited." 605 F.Supp. at 1076. Thus, the Shell Oil court concluded "Congress implicitly authorized retroactive application of sections 107(a)(4)(A) and (B) by affirmatively limiting retroactive application of the third category of liability, damages to natural resources, section 107(a)(4)(C)." Id. Cf. United States v. Conservation Chemical Co., 619 F.Supp. at 213 (three year statute of limitations in CERCLA Sec. 112(d), 42 U.S.C. Sec. 9612(d), applies only to claims against the Superfund and for natural resource damages), citing United States v. Mottolo, 605 F.Supp. 898, 901-10 (D.N.H.1985).
 
 
 34
 As further explained by the Shell Oil court,
 
 
 35
 [t]here is good reason to preclude use of CERCLA monies and liability for cleanup of sites where both the release and the damages occurred wholly before enactment. The sites excluded under 107(f) and 111(d) are stable sites, that is, the environment, though damaged, will not deteriorate further.... Congress apparently decided to utilize the limited resources of the fund created by CERCLA to clean up the thousands of sites ... which are not stable. CERCLA's goal is to clean up these sites before further damage occurs.
 
 
 36
 At the opposite end of the spectrum from the stable sites excluded under 107(f) and 111(d) are those sites ... where the danger to the public health and welfare and to the environment was so imminent that the United States proceeded with cleanup without a special fund of money for that purpose and without assurance that it would be repaid by the persons responsible for the contamination. It was sites containing this magnitude of public danger that prompted Congress to enact CERCLA.
 
 
 37
 Construing section 107(a) to preclude recovery of pre-enactment response costs would carve out an exception to the general retroactive scheme of the statute for those most severe situations where ... the government's response commenced prior to the enactment of the statute.... Congress could [not] have intended to protect the public fisc by imposing liability on the responsible parties, yet except the sites where response had already commenced because the situations were the most imminently threatening. Such an interpretation would penalize the government for prompt response and provide an undeserved windfall to the parties who had created, then abandoned, some of the most egregious sites.
 
 
 38
 605 F.Supp. at 1076-77.
 
 
 39
 The Shell Oil court then reviewed the legislative history of CERCLA, including the treatment of Sec. 4(a)(2) and Sec. 4(n) of S. 1480, and concluded it supported imposing liability for pre-enactment response costs. Id. at 1077-79. The legislative history of CERCLA is very difficult to follow, in part because
 
 
 40
 [t]wo different bills proceeded through the House and the Senate. The Senate made certain last minute amendments to its bill, (S. 1480, 96th Cong., 2d Sess. 1980), most notably the removal of provisions imposing liability for personal injury caused by hazardous waste disposal. The House then struck the language in its bill, H.R. 7020, 96th Cong., 2d Sess. (1980), and substituted the language of the Senate bill. H.R. 7020, as amended, was eventually enacted. The bill retained the House file number, apparently because of a requirement that appropriations measures originate in the House.
 
 
 41
 United States v. Reilly Tar & Chemical Corp., 546 F.Supp. at 1111. As explained by the Shell Oil court,
 
 
 42
 [t]he liability provisions of CERCLA were derived largely from the original Senate bill, S. 1480. S. 1480 contained a liability provision for both costs of removal (Sec. 4(a)(1)) and for natural resources, property and personal injury damages (Sec. 4(a)(2)). During discussions of S. 1480 in the Senate Committee on Environment and Public Works, concern was expressed about retroactive application of the bill.... Senator Domenici introduced a new Sec. 4(n) which limited recovery for pre-enactment damages recoverable under Sec. 4(a)(2)....
 
 
 43
 Significantly, Sec. 4(n)(1) did not apply to Sec. 4(a)(1) which provided liability for response costs. The Senate report [at 37] emphasized the limited scope of Sec. 4(n): ... "Costs of removal (cleanup and containment) are not affected by this provision, nor are any damages associated with continuing releases."
 
 
 44
 605 F.Supp. at 1077-78. As noted by the district court in the present case, both Sec. 4(a)(2) and Sec. 4(n) were deleted from the enacted bill. 579 F.Supp. at 843. We agree with the Shell Oil court, however, that the deletion of these subsections in fact indicates Congress intended to permit recovery of pre-CERCLA response costs because
 
 
 45
 [t]he time limitations on damages added by Sec. 4(n) of S. 1840 were maintained in the final version of CERCLA as the Secs. 107(f) and 111(d) limitations on recovery of natural resources damages. The remaining time limitations of Sec. 4(n) were deleted only because the substantive liability provisions for property and personal injury damages [in Sec. 4(a)(2) ] were deleted from the statute. Thus, the scheme of Sec. 4(n) in limiting recovery for pre-enactment damages, but not response costs, was maintained in the final statute. The legislative history of Sec. 4(n), including the comments emphasizing that recovery of removal costs is not to be limited by retroactivity concerns, therefore applies to the statute as passed.
 
 
 46
 605 F.Supp. at 1079 (emphasis added).
 
 
 47
 In summary, we hold the district court erred in finding that CERCLA does not authorize recovery of pre-enactment response costs. That part of the district court judgment holding that pre-enactment response costs cannot be recovered is reversed.
 
 IV. RCRA
 
 48
 A. Standard and Scope of Sec. 7003 Liability
 
 
 49
 As an alternative basis for recovery of the response costs incurred before December 11, 1980, the government argues on cross-appeal that it can also recover its response costs pursuant to RCRA Sec. 7003(a), 42 U.S.C.A. Sec. 6973(a) (West Supp.1986). The district court did not reach the recovery issue because it held that under RCRA Sec. 7003(a), 42 U.S.C. Sec. 6973(a) (prior to 1984 amendments discussed below), proof of fault or negligence was required in order to impose liability upon past off-site generators and transporters. 579 F.Supp. at 834-37. Because the government did not allege or prove negligence, the district court found no liability under RCRA Sec. 7003(a), 42 U.S.C. Sec. 9673(a) (prior to 1984 amendments). Id. at 837. The government argues that the standard of liability under RCRA Sec. 7003(a), 42 U.S.C.A. Sec. 6973(a) (West Supp.1986), as initially enacted and as amended in 1984, is strict liability, not negligence, and that liability under RCRA can be imposed even though the acts of disposal occurred before RCRA became effective in 1976. We agree.
 
 
 50
 RCRA was initially enacted in 1976, Pub.L. No. 94-580, 90 Stat. 2826 (1976), and was amended in 1978, Pub.L. No. 95-609, 92 Stat. 3083 (1978), and 1980, Pub.L. No. 96-482, 94 Stat. 2348 (1980). In November 1984, after the district court's January 1984 decision in the present case, RCRA was again amended by the Hazardous and Solid Waste Amendments of 1984, Pub.L. No. 98-616, 98 Stat. 3271 (1984) (1984 amendments). We have considered the 1984 amendments and the accompanying legislative history and, for the reasons discussed below, we believe the 1984 amendments support the government's arguments about RCRA's standard and scope of liability and retroactivity.
 
 
 51
 The critical issue is the meaning of the phrase "contributing to." Before its amendment in 1984, RCRA Sec. 7003(a), 42 U.S.C. Sec. 6973(a), imposed liability upon any person "contributing to" "the handling, storage, treatment, transportation or disposal of any solid or hazardous waste" that "may present an imminent and substantial endangerment to health or the environment." The district court did not find either the statutory language or the statutory framework helpful in determining whether past non-negligent off-site generators and transporters were liable under RCRA Sec. 7003(a), 42 U.S.C. Sec. 6973(a) (prior to the 1984 amendments). 579 F.Supp. at 834. The district court then considered the legislative history of the 1980 amendments, id. at 835-36, because "[t]he legislative history of the [RCRA] as originally enacted contains no specific discussion of the reach of section 7003 and no mention of the reasons for its insertion. The hastiness of the [RCRA's] passage in the final days of a congressional session has been well-documented." United States v. Waste Industries, Inc., 734 F.2d 159, 165 (4th Cir.1984), citing Kovacs & Klucsik, The New Federal Role in Solid Waste Management: The Resource Conservation & Recovery Act of 1976, 3 Colum.J.Envtl.L. 205, 216-20 (1976).
 
 
 52
 The district court found two apparently contradictory references in the legislative history. The Report on Hazardous Waste Disposal issued by the Subcommittee on Oversight and Investigations of the Committee on Interstate and Foreign Commerce, H.R.Comm.Print No. IFC 31, 96th Cong., 1st Sess. 31 (1979) (the Eckhardt Report), stated that "a company that generates hazardous waste would be someone 'contributing to' an endangerment under Sec. 7003, even where someone else deposited the waste in an improper disposal site similar to strict liability under common law." The strict liability language in the Eckhardt Report, however, was not adopted later in the Senate Report, which stated
 
 
 53
 a company that generated hazardous waste might be someone "contributing to" air endangerment under section 7003 even where someone else deposited the waste in an improper disposal site (similar to strict liability under common law), where the generator had knowledge of the illicit disposal or failed to exercise due care in selecting or instructing the entity actually conducting the disposal.
 
 
 54
 S.Rep. No. 172, 96th Cong., 2d Sess. 5, reprinted in 1980 U.S. Code Cong. & Ad. News 5019, 5023. The district court resolved the battle between the conflicting legislative references in favor of the Senate Report and held that the language in the Senate Report "would suggest strict liability of present responsible landowners, but the qualifying phrase 'illicit disposal or failed to exercise due care' requires a finding of negligence prior to holding past off-site generators or transporters liable." 579 F.Supp. at 836; accord United States v. Waste Industries, Inc., 556 F.Supp. at 1308; United States v. Wade, 546 F.Supp. at 790. But see, e.g., United States v. Reilly Tar & Chemical Corp., 546 F.Supp. at 1108; United States v. Price, 523 F.Supp. 1055, 1070-71 (D.N.J.1981), aff'd, 688 F.2d 204 (3d Cir.1982); United States v. Diamond Shamrock Corp., 17 Env't Rep. Cases (BNA) 1329, 1333-34 (N.D. Ohio 1981); United States v. Solvents Recovery Service, 496 F.Supp. 1127, 1139 (D.Conn.1980).
 
 
 55
 Then, in November 1984, Congress passed and President Reagan signed the 1984 amendments, which were described as "clarifying" amendments and specifically addressed the standard and scope of liability of Sec. 7003(a). As amended in 1984, RCRA Sec. 7003(a), 42 U.S.C.A. Sec. 6973(a) (West Supp.1986) (new language underlined; deleted language in brackets), now provides in pertinent part:
 
 
 56
 Notwithstanding any other provision of this chapter, upon receipt of evidence that the past or present handling, storage, treatment, transportation or disposal of any solid waste or hazardous waste may present an imminent and substantial endangerment to health or the environment, the Administrator may bring suit on behalf of the United States in the appropriate district court [to immediately restrain any person] against any person (including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility) who has contributed or who is contributing to such handling, storage, treatment, transportation or disposal [to stop] to restrain such person from such handling, storage, treatment, transportation, or disposal [or to take such other action as may be necessary], to order such person to take such other action as may be necessary, or both.
 
 
 57
 As amended, RCRA Sec. 7003(a), 42 U.S.C.A. Sec. 6973(a) (West Supp.1986), specifically applies to past generators and transporters. See United States v. Ottati & Goss, Inc., 630 F.Supp. at 1400 (applying RCRA as amended in 1984); United States v. Conservation Chemical Co., 619 F.Supp. at 217-18 (applying RCRA as amended in 1984).
 
 
 58
 Congress' intent with respect to the standard of liability under RCRA Sec. 7003(a), 42 U.S.C.A. Sec. 6973(a) (West Supp.1986), as amended by the 1984 amendments, is clearly set forth in the accompanying House Conference Report.[5] The House Conference Report also expressly disapproved of the Wade and Waste Industries cases, which were relied upon by the NEPACCO court, as well as the NEPACCO decision itself. The House Conference Report stated:
 
 
 59
 Section 7003 focuses on the abatement of conditions threatening health and the environment and not particularly human activity. Therefore, it has always reached those persons who have contributed in the past or are presently contributing to the endangerment, including but not limited to generators, regardless of fault or negligence. The amendment, by adding the words "have contributed" is merely intended to clarify the existing authority. Thus, for example, non-negligent generators whose wastes are no longer being deposited or dumped at a particular site may be ordered to abate the hazard to health or the environment posed by the leaking of the wastes they once generated and which have been deposited on the site. The amendment reflects the long-standing view that generators and other persons involved in the handling, storage, treatment, transportation or disposal of hazardous wastes must share in the responsibility for the abatement of the hazards arising from their activities. The section was intended and is intended to abate conditions resulting from past activities. Hence, the district court decisions in United States v. Wade, 546 F.Supp. 785 (E.D.Pa.1982), United States v. Waste Industries, Inc. [556 F.Supp. 1301], No. 80-4-Civ-7 (E.D.N.C.1983), and United States v. Northeastern Pharmaceutical & Chemical Co., 579 F.Supp. 823 (W.D.Mo.1984), which restricted the application of section 7003, are inconsistent with the authority conferred by the section as initially enacted and with these clarifying amendments.
 
 
 60
 H.R.Conf.Rep. No. 1133, 98th Cong., 2d Sess. 119 (1984) (emphasis added), reprinted in 1984 U.S. Code Cong. & Ad. News 5649, 5690 (emphasis added).
 
 
 61
 Thus, following the 1984 amendments, past off-site generators and transporters are within the scope of RCRA Sec. 7003(a), 42 U.S.C.A. Sec. 6973(a) (West Supp.1986). From the legislative history of the 1984 amendments, it is clear that Congress intended RCRA Sec. 7003(a), 42 U.S.C.A. Sec. 6973(a) (West Supp.1986), as initially enacted and as amended, to impose liability without fault or negligence and to apply to the present conditions resulting from past activities. In other words, RCRA Sec. 7003(a), 42 U.S.C.A. Sec. 6973(a) (West Supp.1986), as initially enacted and as amended, applies to past non-negligent off-site generators like NEPACCO and tonon-negligent past transporters like Mills. See United States v. Ottati & Goss, Inc., 630 F.Supp. at 1400-01 (applying RCRA as amended in 1984), citing United States v. Hardage, 18 Env't Rep. Cases (BNA) 1685, 1686 (W.D.Okla.1982) (RCRA as amended in 1980); United States v. Conservation Chemical Co., 619 F.Supp. at 198.
 
 
 62
 Appellants argue, however, that the 1984 amendments should not be applied to them because the 1984 amendments are not merely "clarifying" amendments but instead substantively changed the existing law. We disagree. First, Congress itself expressly characterized the 1984 amendments as "clarifying" amendments. Second, as part of the legislative history of the 1984 amendments, Congress expressly stated what its intention had been when it initially passed the RCRA in 1976, even though the 1976 legislative history contained no specific discussion of the standard and scope of liability of Sec. 7003(a).
 
 
 63
 Although this is not legislative history as such, the views of subsequent Congresses on the same or similar statutes are entitled to some weight in the construction of previous legislation. Although the views of subsequent Congresses cannot override the unmistakable intent of the enacting one, this is not a problem in this case because there was no absolutely "unmistakable intent" of Congress concerning section 7003. To the extent that the precise intent of the enacting Congress may be obscure, the views of subsequent Congresses should be given greater deference than they would be otherwise entitled to receive.
 
 
 64
 United States v. Waste Industries, Inc., 734 F.2d at 166 (discussing legislative history of 1980 RCRA amendments) (citations omitted); see also Seatrain Shipbuilding Corp. v. Shell Oil Co., 444 U.S. 572, 596, 100 S.Ct. 800, 813, 63 L.Ed.2d 36 (1980). Thus, by passing the 1984 amendments, the 98th Congress made clear that the intention of the 94th Congress in enacting the RCRA in 1976 had been to impose liability upon past non-negligent off-site generators and transporters of hazardous waste.
 
 B. Retroactivity
 
 65
 This argument is closely related to the question of the scope of Sec. 7003(a) liability discussed above. Appellants argue that because RCRA, unlike CERCLA, is prospective in focus and was not enacted until 1976, RCRA cannot be retroactively applied to impose liability on them for acts that occurred in 1971. A similar retroactivity argument was raised in United States v. Price, 523 F.Supp. at 1071-72. The defendants in United States v. Price had argued that RCRA could not be applied retroactively to impose liability on them for disposing of toxic wastes in 1972. The Price court rejected the retroactivity argument, stating
 
 
 66
 [t]he gravamen of a section 7003 action ... is not defendants' dumping practices, which admittedly ceased with respect to toxic wastes in 1972, but the present imminent hazard posed by the continuing disposal [, which is defined by RCRA Sec. 1003(3), 42 U.S.C. Sec. 6903(3), to include "[t]he ... leaking ... of any solid waste or hazardous waste into or on any land or water,"] of contaminants into the groundwater [or into the environment]. Thus, the statute neither punishes wrongdoing nor imposes liability for injuries inflicted by past acts. Rather, as defendants themselves argue, its orientation is essentially prospective. When construed in this manner, the statute is simply not retroactive. It merely relates to current and future conditions.
 
 
 67
 Id. at 1071; accord United States v. Diamond Shamrock Corp., 17 Env't Rep. Cases (BNA) at 1333-34; cf. United States v. South Carolina Recycling & Disposal, Inc., 20 Env't Rep. Cases (BNA) at 1760-61 (similar analysis of CERCLA). We hold RCRA is not retroactive because it imposes liability for the present and future conditions resulting from past acts. But cf. United States v. Conservation Chemical Co., 619 F.Supp. at 220-22 (holding RCRA should be considered a retroactive law, but finding no due process violation).
 
 
 68
 In summary, we hold that RCRA Sec. 7003(a), 42 U.S.C.A. Sec. 6973(a) (West Supp.1986), as initially enacted and as clarified by the 1984 amendments, imposes strict liability upon past off-site generators of hazardous waste and upon past transporters of hazardous waste. We reverse that part of the the district court judgment holding that RCRA does not apply to past non-negligent off-site generators and transporters.
 
 V. SCOPE OF LIABILITY
 
 69
 The district court found NEPACCO liable as the "owner or operator" of a "facility" (the NEPACCO plant) under CERCLA Sec. 107(a)(1), 42 U.S.C. Sec. 9607(a)(1), and as a "person" who arranged for the transportation and disposal of hazardous substances under CERCLA Sec. 107(a)(3), 42 U.S.C. Sec. 9607(a)(3). 579 F.Supp. at 847. The district court found Lee liable as a "person" who arranged for the disposal of hazardous substances under CERCLA Sec. 107(a)(3), 42 U.S.C. Sec. 9607(a)(3), id. at 847-48, and as an "owner or operator" of the NEPACCO plant under CERCLA Sec. 107(a)(1), 42 U.S.C. Sec. 9607(a)(1), by "piercing the corporate veil." Id. at 848-49. The district court also found Michaels liable as an "owner or operator" of the NEPACCO plant under CERCLA Sec. 107(a)(1), 42 U.S.C. Sec. 9607(a)(1). Id. at 849.
 
 
 70
 Appellants concede NEPACCO is liable under CERCLA Sec. 107(a)(3), 42 U.S.C. Sec. 9607(a)(3), for arranging for the transportation and disposal of hazardous substances at the Denney farm site. Brief for Appellants at 25-26. Because NEPACCO's assets have already been liquidated and distributed to its shareholders, however, it is unlikely that the government will be able to recover anything from NEPACCO.
 
 
 71
 Appellants argue (1) they cannot be held liable as "owners or operators" of a "facility" because "facility" refers to the place where hazardous substances are located and they did not own or operate the Denney farm site, (2) Lee cannot be held individually liable for arranging for the transportation and disposal of hazardous substances because he did not "own or possess" the hazardous substances and because he made those arrangements as a corporate officer or employee acting on behalf of NEPACCO, and (3) the district court erred in finding Lee and Michaels individually liable by "piercing the corporate veil." Appellants have not claimed that any of CERCLA's limited affirmative defenses apply to them. See CERCLA Sec. 107(b)(1), (2), (3), 42 U.S.C. Sec. 9607(b)(1), (2), (3) (no liability if defendant establishes by preponderance of evidence that release was caused solely by act of God, act of war, act or omission of third party other than employee or agent or by contract only if defendant establishes due care and precautions against foreseeable consequences taken); see, e.g., United States v. Ward, 618 F.Supp. at 897-98; United States v. Conservation Chemical Co., 619 F.Supp. at 203-04; see generally Developments, 99 Harv.L.Rev. at 1543-48.
 
 
 72
 The government argues Lee can be held individually liable without "piercing the corporate veil," under CERCLA Sec. 107(a)(3), 42 U.S.C. Sec. 9607(a)(3), and that Lee and Michaels can be held individually liable as "contributors" under RCRA Sec. 7003(a), 42 U.S.C.A. Sec. 6973(a) (West Supp.1986). For the reasons discussed below, we agree with the government's liability arguments.[6]
 
 
 73
 A. Liability under CERCLA Sec. 107(a)(1), 42 U.S.C. Sec. 9607(a)(1)
 
 
 74
 First, appellants argue the district court erred in finding them liable under CERCLA Sec. 107(a)(1), 42 U.S.C. Sec. 9607(a)(1), as the "owners and operators" of a "facility" where hazardous substances are located. Appellants argue that, regardless of their relationship to the NEPACCO plant, they neither owned nor operated the Denney farm site, and that it is the Denney farm site, not the NEPACCO plant, that is a "facility" for purposes of "owner and operator" liability under CERCLA Sec. 107(a)(1), 42 U.S.C. Sec. 9607(a)(1). We agree.
 
 
 75
 CERCLA defines the term "facility" in part as "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located." CERCLA Sec. 101(9)(B), 42 U.S.C. Sec. 9601(9)(B); see New York v. Shore Realty Corp., 759 F.2d 1032, 1043 n. 15 (2d Cir.1985). The term "facility" should be construed very broadly to include "virtually any place at which hazardous wastes have been dumped, or otherwise disposed of." United States v. Ward, 618 F.Supp. at 895 (definition of "facility" includes roadsides where hazardous waste was dumped); see also United States v. Conservation Chemical Co., 619 F.Supp. at 185 (stereotypical waste disposal facility); New York v. General Electric Co., 592 F.Supp. 291, 296 (N.D.N.Y.1984) (dragstrip); United States v. Metate Asbestos Corp., 584 F.Supp. 1143, 1148 (D.Ariz.1984) (real estate subdivision). In the present case, however, the place where the hazardous substances were disposed of and where the government has concentrated its cleanup efforts is the Denney farm site, not the NEPACCO plant. The Denney farm site is the "facility." Because NEPACCO, Lee and Michaels did not own or operate the Denney farm site, they cannot be held liable as the "owners or operators" of a "facility" where hazardous substances are located under CERCLA Sec. 107(a)(1), 42 U.S.C. Sec. 9607(a)(1).
 
 
 76
 B. Individual Liability under CERCLA Sec. 107(a)(3), 42 U.S.C. Sec. 9607(a)(3)
 
 
 77
 CERCLA Sec. 107(a)(3), 42 U.S.C. Sec. 9607(a)(3), imposes strict liability upon "any person" who arranged for the disposal or transportation for disposal of hazardous substances. As defined by statute, the term "person" includes both individuals and corporations and does not exclude corporate officers or employees. See CERCLA Sec. 101(21), 42 U.S.C. Sec. 9601(21); United States v. Ward, 618 F.Supp. at 894 (CERCLA); cf. United States v. Pollution Abatement Services of Oswego, Inc., 763 F.2d 133, 134-35 (2d Cir.) (individual liability for violation of Rivers and Harbors Appropriation Act of 1899), cert. denied, --- U.S. ----, 106 S.Ct. 605, 88 L.Ed.2d 583 (1985). Congress could have limited the statutory definition of "person" but chose not to do so. Compare CERCLA Sec. 101(20)(A), 42 U.S.C. Sec. 9601(20)(A) (limiting definition of "owner or operator"). Moreover, construction of CERCLA to impose liability upon only the corporation and not the individual corporate officers and employees who are responsible for making corporate decisions about the handling and disposal of hazardous substances would open an enormous, and clearly unintended, loophole in the statutory scheme.
 
 
 78
 First, Lee argues he cannot be held individually liable for having arranged for the transportation and disposal of hazardous substances under CERCLA Sec. 107(a)(3), 42 U.S.C. Sec. 9607(a)(3), because he did not personally own or possess the hazardous substances. Lee argues NEPACCO owned or possessed the hazardous substances.
 
 
 79
 The government argues Lee "possessed" the hazardous substances within the meaning of CERCLA Sec. 107(a)(3), 42 U.S.C. Sec. 9607(a)(3), because, as NEPACCO's plant supervisor, Lee had actual "control" over the NEPACCO plant's hazardous substances. We agree. It is the authority to control the handling and disposal of hazardous substances that is critical under the statutory scheme. The district court found that Lee, as plant supervisor, actually knew about, had immediate supervision over, and was directly responsible for arranging for the transportation and disposal of the NEPACCO plant's hazardous substances at the Denney farm site. We believe requiring proof of personal ownership or actual physical possession of hazardous substances as a precondition for liability under CERCLA Sec. 107(a)(3), 42 U.S.C. Sec. 9607(a)(3), would be inconsistent with the broad remedial purposes of CERCLA. Cf. United States v. Mottolo, 629 F.Supp. 56, 14 Envtl.L.Rep. (Envtl.L.Inst.) 20497, 20499 (D.N.H.1984) (person who arranges for disposal or transportation for disposal need not own or possess the hazardous waste).
 
 
 80
 Next, Lee argues that because he arranged for the transportation and disposal of the hazardous substances as a corporate officer or employee acting on behalf of NEPACCO, he cannot be held individually liable for NEPACCO's violations. Lee also argues the district court erred in disregarding the corporate entity by "piercing the corporate veil" because there was no evidence that NEPACCO was inadequately capitalized, the corporate formalities were not observed, individual and corporate interests were not separate, personal and corporate funds were commingled or corporate property was diverted, or the corporate form was used unjustly or fraudulently.
 
 
 81
 The government argues Lee can be held individually liable, without "piercing the corporate veil," because Lee personally arranged for the disposal of hazardous substances in violation of CERCLA Sec. 107(a)(3), 42 U.S.C. Sec. 9607(a)(3). We agree. As discussed below, Lee can be held individually liable because he personally participated in conduct that violated CERCLA; this personal liability is distinct from the derivative liability that results from "piercing the corporate veil." "The effect of piercing a corporate veil is to hold the owner [of the corporation] liable. The rationale for piercing the corporate veil is that the corporation is something less than a bona fide independent entity." Donsco, Inc. v. Casper Corp., 587 F.2d 602, 606 (3d Cir.1978). Here, Lee is liable because he personally participated in the wrongful conduct and not because he is one of the owners of what may have been a less than bona fide corporation. For this reason, we need not decide whether the district court erred in piercing the corporate veil under these circumstances.
 
 
 82
 We now turn to Lee's basic argument. Lee argues that he cannot be held individually liable for NEPACCO's wrongful conduct because he acted solely as a corporate officer or employee on behalf of NEPACCO. The liability imposed upon Lee, however, was not derivative but personal. Liability was not premised solely upon Lee's status as a corporate officer or employee. Rather, Lee is individually liable under CERCLA Sec. 107(a)(3), 42 U.S.C. Sec. 9607(a)(3), because he personally arranged for the transportation and disposal of hazardous substances on behalf of NEPACCO and thus actually participated in NEPACCO's CERCLA violations.
 
 
 83
 A corporate officer is individually liable for the torts he [or she] personally commits [on behalf of the corporation] and cannot shield himself [or herself] behind a corporation when he [or she] is an actual participant in the tort. The fact that an officer is acting for a corporation also may make the corporation vicariously or secondarily liable under the doctrine of respondeat superior; it does not however relieve the individual of his [or her] responsibility.
 
 
 84
 Donsco, Inc. v. Casper Corp., 587 F.2d at 606 (citations omitted); see New York v. Shore Realty Corp., 759 F.2d at 1052-53 (CERCLA; New York law); United States v. Conservation Chemical Co., 619 F.Supp. at 187-90 (CERCLA); United States v. Carolawn Co., 14 Envtl.L.Rep. (Envtl.L.Inst.) 20699, 20700 (D.S.C.1984) (CERCLA); United States v. Mottolo, 629 F.Supp. 56, 14 Envtl.L.Rep. (Envtl.L.Inst.) at 20499; cf. United States v. Pollution Abatement Services of Oswego, Inc., 763 F.2d at 135 (corporate officers liable for violating Rivers and Harbors Appropriations Act of 1899); see also Escude Cruz v. Ortho Pharmaceutical Corp., 619 F.2d 902, 907 (1st Cir.1980) (general discussion of liability of corporate officers for participation in corporate torts), citing Lobato v. Pay Less Drug Stores, Inc., 261 F.2d 406, 408-09 (10th Cir.1958); see generally 3A W. Fletcher, Cyclopedia of the Law of Private Corporations Sec. 1135 (rev. perm. ed. 1986). Thus, Lee's personal involvement in NEPACCO's CERCLA violations made him individually liable.
 
 
 85
 C. Individual Liability under RCRA Sec. 7003(a), 42 U.S.C.A. Sec. 6973(a) (West Supp.1986)
 
 
 86
 The district court did not reach the question of individual liability under RCRA because it concluded that RCRA did not impose liability upon past non-negligent off-site generators like NEPACCO. As we discussed in Part IV, RCRA is applicable to past non-negligent off-site generators. The government argues Lee and Michaels are individually liable as "contributors" under RCRA Sec. 7003(a), 42 U.S.C.A. Sec. 6973(a) (West Supp.1986). We agree.
 
 
 87
 RCRA Sec. 7003(a), 42 U.S.C.A. Sec. 6973(a) (West Supp.1986), imposes strict liability upon "any person" who is contributing or who has contributed to the disposal of hazardous substances that may present an imminent and substantial endangerment to health or the environment. As defined by statute, the term "person" includes both individuals and corporations and does not exclude corporate officers and employees. See RCRA Sec. 1004(15), 42 U.S.C. Sec. 6903(15); cf. United States v. Johnson & Towers, Inc., 741 F.2d 662, 665-66 (3d Cir.1984) (employees could be criminally prosecuted for RCRA violations), cert. denied, 469 U.S. 1208, 105 S.Ct. 1171, 84 L.Ed.2d 321 (1985); United States v. Ward, 676 F.2d 94, 97 (4th Cir.) (chairperson of board convicted of unlawful disposal of toxic substances in violation of 15 U.S.C. Secs. 2605, 2614, and 40 C.F.R. Sec. 761.01(b)), cert. denied, 459 U.S. 835, 103 S.Ct. 79, 74 L.Ed.2d 76 (1982). As with the CERCLA definition of "person," Congress could have limited the RCRA definition of "person" but did not do so. Compare CERCLA Sec. 101(20)(A), 42 U.S.C. Sec. 9601(20)(A) (limiting definition of "owner and operator"). More importantly, imposing liability upon only the corporation, but not those corporate officers and employees who actually make corporate decisions, would be inconsistent with Congress' intent to impose liability upon the persons who are involved in the handling and disposal of hazardous substances. See United States v. Price, 523 F.Supp. at 1073; see also H.R.Conf.Rep. No. 1133, 98th Cong., 2d Sess. 119, reprinted in 1984 U.S.Code Cong. & Ad.News at 5690; S.Rep. No. 172, 96th Cong., 2d Sess. 5, reprinted in 1980 U.S.Code Cong. & Ad.News 8665, 8669.
 
 
 88
 Our analysis of the scope of individual liability under the RCRA is similar to our analysis of the scope of individual liability under CERCLA. NEPACCO violated RCRA Sec. 7003(a), 42 U.S.C.A. Sec. 6973(a) (West Supp.1986), by "contributing to" the disposal of hazardous substances at the Denney farm site that presented an imminent and substantial endangerment to health and the environment. Thus, Lee and Michaels can be held individually liable if they were personally involved in or directly responsible for corporate acts in violation of RCRA. Cf. United States v. Pollution Abatement Services of Oswego, Inc., 763 F.2d at 134 (corporate officers and shareholders individually liable for company discharging refuse into creek in violation of Rivers and Harbors Appropriations Act of 1899); United States v. Johnson & Towers, Inc., 741 F.2d at 664-66 (employees criminally liable for RCRA violations).
 
 
 89
 We hold Lee and Michaels are individually liable as "contributors" under RCRA Sec. 7003(a), 42 U.S.C.A. Sec. 9673(a) (West Supp.1986). Lee actually participated in the conduct that violated RCRA; he personally arranged for the transportation and disposal of hazardous substances that presented an imminent and substantial endangerment to health and the environment. Unlike Lee, Michaels was not personally involved in the actual decision to transport and dispose of the hazardous substances. As NEPACCO's corporate president and as a major NEPACCO shareholder, however, Michaels was the individual in charge of and directly responsible for all of NEPACCO's operations, including those at the Verona plant, and he had the ultimate authority to control the disposal of NEPACCO's hazardous substances. Cf. New York v. Shore Realty Corp., 759 F.2d at 1052-53 (shareholder-manager held liable under CERCLA).
 
 
 90
 In summary, we hold Lee individually liable for arranging for the transportation and disposal of hazardous substances in violation of CERCLA Sec. 107(a)(3), 42 U.S.C. Sec. 9607(a)(3), and Lee and Michaels individually liable for contributing to an imminent and substantial endangerment to health and the environment in violation of RCRA Sec. 7003(a), 42 U.S.C.A. Sec. 6973(a) (West Supp.1986).
 
 VI. CAPACITY OF NEPACCO TO BE SUED
 
 91
 The capacity of a corporation to sue or be sued is determined by the law under which it is organized. Fed.R.Civ.P. 17(b). The district court held, under Delaware law, "a corporation with a forfeited charter is not completely dead for all purposes, but merely in 'a state of coma,' during which it is still subject to suit, even if the suit is brought more than three years after the charter forfeiture." 579 F.Supp. at 827 n. 1, citing Ross v. Venezuelan-American Independent Oil Producers Ass'n, 230 F.Supp. 701 (D.Del.1964), and Wax v. Riverview Cemetery Co., 41 Del. (2 Terry) 424, 24 A.2d 431 (Super.Ct.1942).
 
 
 92
 Appellants argue the district court erred in holding that under Delaware law NEPACCO had the capacity to be sued. Appellants argue NEPACCO did not have the capacity to be sued because the government's action was not brought against NEPACCO until 1980, more than three years after NEPACCO had ceased to do business (1972), had liquidated its assets (1974), and had forfeited its charter for failure to nominate a successor registered agent (1976). See Del.Code Ann. tit. 8, Sec. 278. Appellants admit that NEPACCO has failed to file a certificate of voluntary dissolution with the Delaware Secretary of State, but they argue that NEPACCO simply no longer exists as a corporate entity. Appellants argue that under Delaware law the three-year period begins to run after either dissolution or forfeiture, citing Frederic G. Krapf & Son, Inc. v. Gorson, 243 A.2d 713, 715 (Del.Super.Ct.1968).
 
 
 93
 The government argues the district court correctly held that under Delaware law NEPACCO had the capacity to be sued. The government argues that forfeiture of the corporate charter and voluntary dissolution are not equivalent and that under Delaware law a corporation whose charter has been forfeited has not in fact been dissolved, but instead is merely in a suspended state from which it can be revived at any time.
 
 
 94
 Although the language in Frederic G. Krapf & Son, Inc. v. Gorson, id. at 714, suggest that forfeiture and dissolution may be comparable for purposes of Del. Code Ann. tit. 8, Sec. 278, we agree with the district court that forfeiture of the corporate charter and voluntary dissolution of the corporation are not legally equivalent. The cases distinguishing forfeiture from dissolution are preoccupied with preserving the marketability of titles; however, the case law does support the district court's analysis distinguishing forfeiture from voluntary dissolution. In the key case, Wax v. Riverview Cemetery Co., a holding company had mortgaged certain property it owned. The holding company then conveyed the property and mortgage to a third party. The holding company's charter was then revoked for nonpayment of taxes. Nine years later the mortgagee foreclosed on the property and bought it at a judicial sale. When the mortgagee later sold the property, the prospective buyer challenged the marketability of the mortgagee's title. The state court held that forfeiture of the holding company's charter for nonpayment of taxes "does no more than forfeit the corporate right to do business, but does not extinguish the corporation as a legal entity," and, therefore, the holding company could still "serve as [a] repository of title and as [an] obligor of a debt." 24 A.2d at 436. Accord Ross v. Venezuelan-American Independent Oil Producers Ass'n, 230 F.Supp. at 703-04 (federal district court for the District of Delaware interpreting Delaware law); see generally 16A W. Fletcher, Cyclopedia of the Law of Private Corporations ch. 65 (rev. perm. ed. 1979). But cf. Johnson v. Helicopter & Airplane Services Corp., 404 F.Supp. 726, 730-35 (D.Md.1975) (overview of Delaware and federal cases; holding that a corporation that had been dissolved, even though it was still conducting certain proceedings brought during its winding-up period, had lost its capacity to sue and be sued and thus could not be sued more than three years after dissolution).
 
 
 95
 Here, NEPACCO has lost its charter, but it has not been dissolved. We agree with the district court that, under these circumstances, NEPACCO's charter can be "revived" and that it has the capacity to be sued even though the government's initial complaint was not filed until more than three years after forfeiture.
 
 VII. BURDEN OF PROOF OF RESPONSE COSTS
 
 96
 The district court found appellants had the burden of proving the government's response costs were inconsistent with the NCP, 579 F.Supp. at 850, and that response costs that are not inconsistent with the NCP are conclusively presumed to be reasonable and therefore recoverable, id. at 851. Appellants argue the district court erred in requiring them to prove the response costs were inconsistent with the NCP, not cost-effective or unnecessary. Appellants further argue the district court erred in assuming all costs that are consistent with the NCP are conclusively presumed to be reasonable. Appellants note that the information and facts necessary to establish consistency with the NCP are matters within the possession of the government.
 
 
 97
 We believe the district court's analysis is correct. CERCLA Sec. 107(a)(4)(A), 42 U.S.C. Sec. 9607(a)(4)(A), states that the government may recover from responsible parties "all costs of removal or remedial action ... not inconsistent with the [NCP]." The statutory language itself establishes an exception for costs that are inconsistent with the NCP, but appellants, as the parties claiming the benefit of the exception, have the burden of proving that certain costs are inconsistent with the NCP and, therefore, not recoverable. See United States v. First City National Bank, 386 U.S. 361, 366, 87 S.Ct. 1088, 1092, 18 L.Ed.2d 151 (1967). Contrary to appellants' argument, "not inconsistent" is not, at least for purposes of statutory construction and not syntax, the same as "consistent." See, e.g., United States v. Ward, 618 F.Supp. at 899; United States v. Conservation Chemical Co., 619 F.Supp. at 186; Lone Pine Steering Comm. v. EPA, 600 F.Supp. 1487, 1499 (D.N.J.), aff'd, 777 F.2d 882 (3d Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986); New York v. General Electric Co., 592 F.Supp. at 303-04 (state action for recovery of response costs); J.V. Peters & Co. v. Ruckelshaus, 584 F.Supp. 1005, 1010 (N.D.Ohio 1984), aff'd, 767 F.2d 263 (6th Cir.1985).
 
 
 98
 The statutory scheme also supports allocation of the burden of proof of inconsistency with the NCP upon the defendants when the government seeks recovery of its response costs. As noted above, CERCLA Sec. 107(a)(4)(A), 42 U.S.C. Sec. 9607(a)(4)(A), provides that the federal government or a state can recover "all costs of removal or remedial action ... not inconsistent with the [NCP]." In comparison, CERCLA Sec. 107(a)(4)(B), 42 U.S.C. Sec. 9607(a)(4)(B), provides that "any other person," referring to any "person" other than the federal government or a state, can recover "any other necessary costs of response ... consistent with the [NCP]." That statutory language indicates that non governmental entities must prove that their response costs are consistent with the NCP in order to recover them. The statutory scheme thus differentiates between governmental and nongovernmental entities in allocating the burden of proof of whether response costs are consistent with the NCP. See, e.g., United States v. Ward, 618 F.Supp. at 899; New York v. General Electric Co., 592 F.Supp. at 303-04 (state action for recovery of response costs).
 
 
 99
 The statutory language also supports the district court's reasoning that under CERCLA Sec. 107(a)(4)(A), 42 U.S.C. Sec. 9607(a)(4)(A), "all costs" incurred by the government that are not inconsistent with the NCP are conclusively presumed to be reasonable. CERCLA does not refer to "all reasonable costs" but simply to "all costs." Cf. Federal Water Pollution Control Act Sec. 311(f) (FWPCA), 33 U.S.C. Sec. 1321(f) (responsible parties are liable for "actual costs incurred" by the government for cleanup); see, e.g., Union Petroleum Corp. v. United States, 228 Ct.Cl. 54, 651 F.2d 734, 744 (1981) (construing "actual costs incurred" in 33 U.S.C. Sec. 1321(f) to apply conclusive presumption of reasonableness). Case law interpreting the FWPCA is relevant because CERCLA defines the NCP by referring to the NCP mandated by the FWPCA. CERCLA Secs. 101(31), 105, 42 U.S.C. Secs. 9601(31), 9605; see United States v. Conservation Chemical Co., 619 F.Supp. at 204 (noting cross-references in CERCLA to FWPCA); United States v. Shell Oil Co., 605 F.Supp. at 1073-74 & n. 4 (the NCP as revised to incorporate CERCLA was issued in 1982).[7]
 
 
 100
 Appellants also argue the district court erred in requiring them to establish that the government's cleanup actions were not cost-effective and necessary. This argument challenges the government's choice of a particular cleanup method. We note, however, that CERCLA Sec. 105(3), (7), 42 U.S.C. Sec. 9605(3), (7), requires the EPA, as the agency designated by the President, to revise the NCP required by Sec. 311 of the FWPCA, 33 U.S.C. Sec. 1321, to include the "national hazardous substance response plan," which is specifically required by CERCLA to include "methods and criteria for determining the appropriate extent of removal, remedy, and other measures," and "means of assuring that remedial action measures are cost-effective." Consideration of whether particular action is "necessary" is thus factored into the "cost-effective" equation. The term "cost-effective" is defined by regulation as "the lowest cost alternative that is technologically feasible and reliable and which effectively mitigates and minimizes damage to and provides adequate protection of public health, welfare, or the environment." 40 C.F.R. Sec. 300.68(j) (1986).
 
 
 101
 Because determining the appropriate removal and remedial action involves specialized knowledge and expertise, the choice of a particular cleanup method is a matter within the discretion of the EPA. The applicable standard of review is whether the agency's choice is arbitrary and capricious. As explained in United States v. Ward,
 
 
 102
 [i]f [appellants] wish the court to review the consistency of [the government's] actions with the NCP, then they are essentially alleging that the EPA did not carry out its statutory duties. The statute provides liability except for costs "not inconsistent" with the NCP. This language requires deference by this court to the judgment of agency professionals. [Appellants], therefore, may not seek to have the court substitute its own judgment for that of the EPA. [Appellants] may only show that the EPA's decision about the method of cleanup was "inconsistent" with the NCP in that the EPA was arbitrary and capricious in the discharge of their duties under the NCP.
 
 
 103
 618 F.Supp. at 900.
 
 
 104
 Here, appellants failed to show that the government's response costs were inconsistent with the NCP. Appellants also failed to show that the EPA acted arbitrarily and capriciously in choosing the particular method it used to clean up the Denney farm site.
 
 
 105
 VIII. REDUCTION OF AWARD BY AMOUNT OF PRIOR SETTLEMENT
 
 
 106
 Appellants next argue the district court erred in refusing to reduce the amount of its judgment by $100,000, the amount paid by Syntex pursuant to the settlement and consent decree in September 1980. Appellants argue that unless the judgment is offset by the amount of the Syntex settlement, the government will improperly receive a double recovery of that amount from Syntex and appellants. Thus, appellants argue the district court should have reduced the award by $100,000.
 
 
 107
 The government argues the district court correctly refused to reduce the award by the amount of the Syntex settlement. We agree. According to the government's exhibits, the government did not seek a double recovery. The government had incurred response costs of $494,639.54 through March 10, 1983, but sought recovery from appellants of only $394,639.54, or the total amount of its response costs to date reduced by the $100,000 Syntex settlement, plus future response costs. Thus, the government sought to recover from appellants an amount that had already been reduced to reflect the amount of the Syntex settlement.
 
 IX. DEMAND FOR JURY TRIAL
 
 108
 Appellants next argue the district court erred in denying their demand for a jury trial because the government's action for recovery of its response costs under CERCLA and RCRA was essentially a claim for legal damages. We disagree. When the government seeks recovery of its response costs under CERCLA or its abatement costs under RCRA, it is in effect seeking equitable relief in the form of restitution or reimbursement of the costs it expended in order to respond to the health and environmental danger presented by hazardous substances. See, e.g., United States v. Price, 688 F.2d at 213-14 (reimbursement of abatement costs under RCRA as equitable relief); United States v. Conservation Chemical Co., 619 F.Supp. at 201 (RCRA); United States v. Mottolo, 605 F.Supp. at 912-13 (citing seven cases, including NEPACCO, that characterize recovery of response costs under CERCLA as equitable relief); see generally Developments, 99 Harv.L.Rev. at 1492 & nn. 46, 47. The district court correctly found appellants did not have a right to a jury trial of claims for equitable relief. See Ross v. Bernhard, 396 U.S. 531, 533, 90 S.Ct. 733, 735, 24 L.Ed.2d 729 (1970).
 
 X. CONCLUSION
 
 109
 In conclusion, we hold (1) CERCLA applies retroactively, (2) the government can recover its pre-enactment response costs under CERCLA, (3) RCRA imposes strict liability upon past off-site generators and transporters of hazardous substances, (4) Lee and Michaels can be held individually liable, (5) NEPACCO had the capacity to be sued, (6) appellants had the burden of proving the government's response costs were inconsistent with the NCP, (7) the government's award should not be reduced by the Syntex settlement, and (8) appellants did not have the right to a jury trial.
 
 
 110
 Accordingly, the judgment of the district court is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion. The district court's refusal to dismiss NEPACCO as a party defendant, retroactive application of CERCLA to pre-enactment conduct, imposition of individual liability upon corporate officers who actually control the handling and disposal of hazardous substances, placement upon the responsible parties of the burden of proof that the government's response costs are inconsistent with the NCP, refusal to reduce the award by the amount of the prior settlement, and denial of a jury trial are affirmed. The district court's refusal to allow the government to recover its response costs incurred before the enactment of CERCLA in 1980, refusal to impose strict liability upon past off-site generators and transporters of hazardous substances under RCRA Sec. 7003(a), 42 U.S.C.A. Sec. 6973(a) (West Supp.1986), and imposition of liability upon appellants as owners or operators of a facility pursuant to CERCLA Sec. 107(a)(1), 42 U.S.C. Sec. 9607(a)(1), are reversed.
 
 
 111
 On remand, before awarding a specific amount of pre-enactment response costs to the government under CERCLA, the district court should afford appellants an opportunity to show that the government's pre-enactment response costs were inconsistent with the NCP. Alternatively, because the government also sought to recover the response costs it incurred before the enactment of CERCLA in the form of equitable relief as abatement costs under RCRA, on remand the district court could grant the government recovery of such costs as a matter of equitable discretion.
 
 
 112
 JOHN R. GIBSON, Circuit Judge, concurring in part and dissenting in part.
 
 
 113
 I concur with the court's opinion except for parts IV-A, IV-B, and V-C, holding that RCRA Sec. 7003(a), 42 U.S.C. Sec. 6973(a) (1982), imposes liability on past off-site nonnegligent generators and transporters and determining that the government could recover its response costs from Lee and Michaels under section 7003(a). I respectfully dissent from the court's opinion as to those points.
 
 
 114
 The majority's analysis of liability under the RCRA focuses exclusively on the legislative history of the 1984 amendments to the RCRA. The majority particularly rely on House Conference Report No. 1133, which singles out the district court's opinion and states that it is "inconsistent with the authority conferred by [section 7003] as initially enacted and with these clarifying amendments." H.R.Conf.Rep. No. 1133, 98th Cong., 2d Sess. 119 (1984), reprinted in 1984 U.S. Code Cong. & Ad.News 5649, 5690. The Conference Report also states that section 7003 "has always" reached nonnegligent generators and transporters. Id. From these statements, the majority conclude that "the 98th Congress made clear that the intention of the 94th Congress in enacting the RCRA in 1976 had been to impose liability upon past nonnegligent off-site generators and transporters of hazardous waste." Ante at 741. Thus, the majority hold that the RCRA as it read prior to the 1984 amendments imposed strict liability upon past generators and transporters and that the district court erred in holding that proof of fault or negligence was necessary for the government to recover its response costs under the RCRA. Ante at 740-741.
 
 
 115
 I think that the 1984 House Conference Report is nothing more than a blatant effort by members of a later Congress to graft their personal views of the scope of liability under the RCRA onto the original act. It is bootstrapping, and the majority fail to recognize it as such. The Conference Report characterizes the 1984 amendments as "clarifying" the RCRA. The "clarifying" amendments to section 7003, however, did not alter the crucial phrase "contributing to," the construction of which the majority acknowledge as "the critical issue," ante at 738, other than to cast it in both the present and the past tense: "has contributed to or * * * is contributing." 42 U.S.C.A. Sec. 6973(a) (West Supp.1986). Nor do the amendments supply a definition for this phrase. The amendments to section 7003(a) are directed toward changing the scope of the section to reach past as well as present and future generators and transporters of hazardous waste. I believe this to be a substantive change, rather than a clarification. In any event, because the amendments did not relate to the "contributing to" language, the statements in the House Conference report regarding the standard of liability under section 7003(a)--negligence versus strict liability--are wholly gratuitous.
 
 
 116
 "[T]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." United States v. Price, 361 U.S. 304, 313, 80 S.Ct. 326, 332, 4 L.Ed.2d 334 (1960). "[S]uch '[l]egislative observations ... are in no sense part of the legislative history.' 'It is the intent of the Congress that enacted [the section] ... that controls.' " Oscar Mayer & Co. v. Evans, 441 U.S. 750, 758, 99 S.Ct. 2066, 2072, 60 L.Ed.2d 609 (1979) (quoting United Airlines, Inc. v. McMann, 434 U.S. 192, 200 n. 7, 98 S.Ct. 444, 449 n. 7, 54 L.Ed.2d 402 (1977), and Teamsters v. United States, 431 U.S. 324, 354 n. 39, 97 S.Ct. 1843, 1864 n. 39, 52 L.Ed.2d 396 (1977)). Moreover, the Supreme Court has observed that "subsequent legislative history will rarely override a reasonable interpretation of a statute that can be gleaned from its language and legislative history prior to its enactment." Consumer Product Safety Commission v. GTE Sylvania, 447 U.S. 102, 118 n. 13, 100 S.Ct. 2051, 2061 n. 13, 64 L.Ed.2d 766 (1980). This court has also recently acknowledged the dubious value of subsequent legislative history. See Citizens State Bank of Marshfield v. FDIC, 751 F.2d 209, 217 (8th Cir.1984). Applying these principles to the district court's interpretation of the RCRA and its legislative history, I would affirm its reasonable conclusion that Congress did not intend to impose strict liability on past generators and transporters of hazardous waste. I would not accept at face value the assertion by certain members of the 98th Congress that they can divine the intent of the 94th Congress in enacting the RCRA some eight years earlier.
 
 
 117
 I recognize that the substance of the 1984 amendments may have a bearing on this case. The district court did not have before it the amendments or their associated legislative materials. As a general rule we are to apply the law in effect at the time we render our decision. See, e.g., Bradley v. Richmond School Board, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). The majority purport to base their decision on the RCRA as it existed prior to the 1984 amendments, however, and agree with the House Conference Report that the 1984 amendments merely "clarified" the scope of liability under the RCRA. Ante at 741. I differ. I have already observed that I believe the 1984 amendments significantly altered the scope of liability under the RCRA. I think that the parties should at least be given the opportunity to develop their factual and legal contentions as to the effect of and in light of the 1984 amendments before the district court and thus present the issue more squarely for our consideration, if appealed.
 
 
 118
 I also disagree with the majority's determination that Lee and Michaels are liable under section 7003(a) for the government's response costs as generators and transporters. The district court did not reach this issue, as it concluded that RCRA liability did not extend to past nonnegligent generators and transporters of hazardous waste. The majority, however, both reverse the district court's legal conclusion and then find as a factual matter that Lee and Michaels are liable. Ante at 745-46. This type of factfinding is clearly the province of the district court, and remanding the question of liability to the district court is more appropriate than the course of action taken by the court today. Missouri Pacific Joint Protective Board v. Missouri Pacific Railroad Co., 730 F.2d 533, 537 (8th Cir.1984).
 
 
 
 [1]
 The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri
 
 
 [2]
 CERCLA establishes two funds: CERCLA Sec. 232, 42 U.S.C. Sec. 9641, establishes the Post-Closure Liability Trust Fund, which is funded through taxes on hazardous substances disposed of at qualified disposal facilities, and the "Superfund," or Hazardous Substances Response Trust, which is funded largely by special taxes on the petroleum and chemical industries and also by general appropriations
 
 
 [3]
 We do not consider in this appeal and cross-appeal the arguments raised by Syntex about causation, strict liability, joint and several liability, and separation of powers. Syntex, as amicus, cannot raise issues not raised by the parties. See, e.g., Preservation Coalition, Inc. v. Pierce, 667 F.2d 851, 861-62 (9th Cir.1982); Bing v. Roadway Express, Inc., 485 F.2d 441, 452 (5th Cir.1973). Most cases have imposed strict liability and joint and several liability under RCRA and CERCLA. See, e.g., United States v. Ottati & Goss, Inc., 630 F.Supp. 1361, 1395-96, 1401 (D.N.H.1985); United States v. Conservation Chemical Co., 619 F.Supp. 162, 191, 198-99, 204 (W.D.Mo.1985); United States v. Chem-Dyne Corp., 572 F.Supp. 802, 808-11 (S.D.Ohio 1983). See also Developments in the Law--Toxic Waste Litigation, 99 Harv.L.Rev. 1498, 1517-43 (1986)
 
 
 [4]
 The court in United States v. South Carolina Recycling & Disposal, Inc., 20 Env't Rep. Cases (BNA) 1753, 1760 (D.S.C.1984), noted CERCLA does not apply "retroactively" because it does not impose liability for past conduct; rather, CERCLA imposes liability upon those parties responsible for causing certain conditions, that is, the release or threatened release or hazardous substances, that are the present or future results of their past actions
 
 
 [5]
 The earlier House Report also stated:
 [t]hese amendments are intended to clarify the breadth of Section 7003 as to the persons, conditions and acts it covers. The amendments clearly provide that anyone who has contributed or is contributing to the creation, existence, or maintenance of an imminent and substantial endangerment is subject to the equitable authority of Section 7003, without regard to fault or negligence. Such persons include, but are not limited to, past and present generators (both off-site and on-site) of hazardous wastes, past and present owners and operators of waste treatment, storage, or disposal facilities, and past and present transporters of solid or hazardous wastes. In addition, Section 7003 is clarified to establish that it applies to any act, whether past or present, which has resulted in or may result in an imminent and substantial endangerment to public health or the environment....
 As evidenced by the definition of "disposal" in Section 1004(3), which includes the "leaking" of hazardous wastes, Section 7003 has always provided the authority to require the abatement of present conditions of endangerment resulting from past disposal practices, whether intentional or unintentional....
 Moreover, because Section 7003 focuses on the abatement of conditions threatening health and the environment and not a particular human activity, it has always reached those persons who have contributed in the past or are presently contributing to the endangerment, including but not limited to generators, regardless of fault or negligence. The amendment, by adding the words "have contributed" is merely intended to clarify the existing authority. Thus, for example, nonnegligent generators whose wastes are no longer being deposited or dumped at a particular site may be ordered to abate the hazard to health or the environment posed by the leaking of wastes they once deposited or caused to be deposited on the site. The amendment reflects the long-standing view that generators and other persons involved in the handling, storage, treatment, transportation, or disposal of hazardous wastes must share in the responsibility for the abatement of the hazards arising from their activities.
 In addition, due to the nature of the hazards presented by disposal sites, Section 7003 is "intended to confer upon the courts the authority to grant affirmative equitable relief to the extent necessary to eliminate any risks posed by toxic wastes." United States v. Price, 688 F.2d 204, 213-14 (3d Cir.1982). The section was intended and is intended to abate conditions resulting from past activities. Hence, the lower court decisions in United States v. Wade, 546 F.Supp. 785 (E.D.Pa.1982), and United States v. Waste Industries, Inc., [556 F.Supp. 1301], No. 80-4-Civ-7 (E.D.N.C.1983), which restricted the application of Section 7003, are inconsistent with the authority conferred by the section as initially enacted and with these clarifying amendments.
 H.R.Rep. No. 198 (Part I), 98th Cong., 2d Sess. 47-49 (1983) (emphasis added), reprinted in 1984 U.S.Code Cong. & Ad.News 5576, 5606-09 (emphasis added).
 
 
 [6]
 Despite the findings by the district court, the government did not seek to impose liability upon NEPACCO, Lee and Michaels under CERCLA Sec. 107(a)(1), 42 U.S.C. Sec. 9607(a)(1), as the owners or operators of a facility where hazardous substances are located, and in these appeals the government has expressed no opinion with respect to "owner and operator" liability under the circumstances in the present case. Brief for Appellee at 46 n. 23. The government further argues that it is unnecessary to decide whether Michaels would also be liable under CERCLA Sec. 107(a)(3), 42 U.S.C. Sec. 9607(a)(3), because RCRA Sec. 7003(a), 42 U.S.C.A. Sec. 6973(a) (West Supp.1986), "so clearly fits the circumstances of this case." Brief for Appellee at 47 n. 24. The district court did not reach the question of Michaels' liability under CERCLA Sec. 107(a), 42 U.S.C. Sec. 9607(a). 579 F.Supp. at 849 n. 31
 
 
 [7]
 The 1982 NCP, 40 C.F.R. Sec. 300.1-.86 (1985), was revised effective Feb. 18, 1986, 50 Fed.Reg. 47,912-79 (1985)